Mason *v.* Hutchins & Co.

---

### JOSEPH MASON *v.* GUSTIN HUTCHINS & CO.

*Parent and Child.    Infant.    Estoppel.    Justice of the Peace.    Jurisdiction.    Book Account.*

An agreement between father and son, by which the former agrees to relinquish his right to the services of the latter during his minority, for a certain sum per annum, reserving a claim upon his wages to that amount, and the right to treat the agreement as void in case that sum is not paid, and also to have the care of the son, and the control of his affairs during his minority, so far as to see that he gets his pay from those for whom he works, and that his wages are kept 'for his use and benefit, is not such an agreement of emancipation as divests the father of his right to sue and collect pay for his son's services.

A publication by a parent of a notice of the emancipation of his son, more liberal to the latter than the actual agreement between them, will not, as against one who has no knowledge of such publication, estop the father from insisting on such right to his son's wages as the contract between them actually gives.

Neither will the false statement, made under such circumstances, by the son to his employer, that he has been emancipated by his father, cut off the father's right to his wages, if the employer does not do or neglect to do something on the faith of such statement.

If in an action of book account, appealed from the judgment of a justice of the peace, the debit side of the plaintiff's book, and of his account as presented before the auditor, is less than one hundred dollars, the jurisdiction of the court is not defeated by the fact that the auditor adopts such a mode of stating the account, as swells the debit side of the plaintiff's account to more than one hundred dollars:

BOOK ACCOUNT. The action was originally brought before a justice of the peace, from whose judgment it was appealed. The plaintiff's account, was for the labor of his minor son, Albert, and the use of his horse and harness in the defendant's service, and the debit side of his account as presented before the auditor, was less than one hundred dollars.

The auditor reported that in November, 1855, the plaintiff entered into a written contract with his son, Albert, in the following words.

"Know all men by these presents, that I, Joseph Mason, of Newfane, in the county of Windham and State of Vermont, has

sold his son, Albert Mason, his time till he is one and twenty years old, for twenty-five dollars a year, to be paid yearly till he is of age. If said Albert Mason fulfills his bargain to said Joseph Mason, I shall claim no more of his wages than the twenty-five dollars a year, otherwise the bargain is to be null and void.

He agrees to be of no expense to me from the date of this con-tract. And said Joseph Mason is to see that he has his wages from the men he works for, and see that they are kept for his use and benefit, all but twenty-five dollars a year. Said Albert Mason is to be in the care of Joseph Mason, his father, till he is one and twenty years old.                     JOSEPH MASON."

*November* 21, 1855.

Immediately after the execution of this contract, the plaintiff caused to be published the following notice for three weeks suc-cessively, in the Vermont Phœnix, a newspaper published at Brattleboro, in the same county in which the plaintiff and defend-ants resided.

"NOTICE.—I have sold my son, Albert Mason, his time until he is of age. Therefore, I shall pay no debts of his contracting, nor claim any of his wages, except what we have agreed on.

JOSEPH MASON."

*Newfane, November 20th,* 1855.

It did not appear that either of the defendants ever saw this notice, or had any knowledge of the existence of the contract of emancipation above set forth, but while Albert Mason was in their employment, as afterwards stated, he told one of them that he "had bought his time of his father and was his own man."

This contract between Albert and his father was not rescinded ; but Albert did not comply with it by paying the twenty-five dol-lars per year to his father. After the date of this contract, and before he went into the defendants' employment, Albert labored for other persons and collected and used his wages for the pur-chase of various articles of personal property other than cloth-ing. These purchases were generally known to the plaintiff, and were consented to by him, and in speaking of the property so purchased, both the plaintiff and Albert spoke of it as belonging to Albert.

In May, 1858, Albert then being about eighteen years old, with the plaintiff's consent commenced working for the defendants as a peddler, using in that business the plaintiff's horse and harness. He continued in the defendants' employment as a peddler, until November, 1858, for which service and the use of the horse and harness of the plaintiff, the auditor found that the amount charged by the plaintiff, and being the only item of his account, was a reasonable compensation upon the close of Albert's employment by the defendants, he and they undertook to make a settlement, and finally did make what the defendants understood to be a settlement, for Albert's labor for them and for the use of the horse and harness, and Albert then executed a receipt in full of all demands. The defendants at that time claimed that, upon a settlement of all their accounts with Albert, both that relating to his service, and also that connected with certain other transactions between them, he was indebted to them about forty dollars, and for the purpose of paying this balance, he executed to them a bill of sale of a watch which he had purchased from his earnings previous to going into their employment. Albert had no authority from the plaintiff to settle with them for his wages, or to sell the watch, unless such authority is to be implied from the facts already stated.

The defendants at the time of this alleged settlement credited Albert Mason, with whom alone the account for his services was kept by him, upon their books with forty dollars for this watch, that being the amount agreed upon as its value by them and Albert.

The auditor in reporting the plaintiff's account, allowed him for Albert's work for the defendants as claimed in the plaintiff's account. He also allowed to the plaintiff the item of forty dollars for the watch, which in addition to the items originally presented by the plaintiff, made the aggregate of the debit side of his account more than one hundred dollars. The auditor also allowed sundry items of the defendant's account, so that the balance found due by him, from the defendants to the plaintiff, was twenty-four dollars and thirty-one cents.

Upon this report, the county court at the September Term, 1859,—REDFIELD, Ch. J., presiding—rendered judgment for the

plaintiff for the balance reported by the auditor, to which the defendants excepted.

*Butler & Wheeler* for the defendants.

*Bradley & Kellogg* and *A. Stoddard* for the plaintiffs.

PIERPOINT, J. It is first objected, that this action cannot be maintained in the name of the present plaintiff.

It appears that on the 21st of November, 1855, and before the accruing of the accounts which this suit is brought to adjust, the plaintiff and his son, Albert Mason, then a minor, entered into an agreement by which the plaintiff was to relinquish his right to the services of his said son, during his minority, for the sum of twenty-five dollars per year, reserving a claim upon his wages to that amount, and the right to treat the whole as void in case the twenty-five dollars per year was not paid. Also reserving his right to the care of his son during his minority, and also the control of his affairs, so far as to see that he got his pay from those for whom he worked, and that his wages were kept for his use and benefit.

This we think cannot be called a deed of emancipation. The father does not surrender the control of the person of his son, or of his wages, but expressly reserves the right to collect his wages, and to retain them for his use. It is only an agreement on the part of the father that he will give his son, when he comes of age, the whole avails of his labors during his minority, except twenty-five dollars per year, and what he shall require for his expenses, thus offering an inducement to his son to be diligent, faithful and economical, at the same time reserving to himself the right to control his son and his affairs, so far as to see that he is not led astray, imposed upon, or cheated by those for whom he labored.

We think there is nothing in the terms of this contract that divests the plaintiff of his right to sue for and collect the pay for his son's services.

The notice published in the Vermont Phœnix can have no effect upon this case. So far as that notice is at variance with

Mason v. Hutchins & Co.

the agreement, the plaintiff would be bound by it as between him, and any person who had knowledge of it, and had acted upon the faith of it. The publication itself gives notice of the existence of an agreement between the father and son, on the subject of wages, so that any person acting upon it, would be bound by the terms of that agreement if they neglected to make enquiry in regard to it. The case, however, finds expressly that the defendants had no knowledge of the publication.

It does appear that the son, once after the agreement was entered into, and while he was at work for the defendants, told them that he had bought his time of his father and was his own man, but did not tell them what the terms of agreement were. There is nothing in the case tending to show that the defendants did or neglected to do anything on the faith of that communication, or were in any manner affected by it. So that this fact can have no weight in this case.

The defendants' second objection is, that the plaintiff's account exceeded one hundred dollars, so that a justice of the peace had no jurisdiction of it.

As the accounts are stated by the auditor, the plaintiff's account is made to exceed one hundred dollars ; but his account as he presented it, and claimed it, did not. His account as it stood upon his books did not amount to that sum, and it does not appear that up to the time of the trial before the auditor, he had any knowledge of the transaction between his son and the defendants, out of which the credit for the watch arose. The watch did not necessarily constitute any part of the plaintiff's claim against the defendants. His claim against the defendants was for his son's services and the use of the horse and harness. In answer to this claim, the defendants introduced their account against the son, a part of which related to transactions connected with the contract for service, and a part not. Upon this account was a credit of forty dollars for the watch received of the son in part payment of the account. No objection was made to the adjustment of this account, in this action, and the auditor proceeded to adjust it. If in adjusting the accounts the auditor had adopted a different method of stating the accounts, he would have avoided the appearance of a conflict of jurisdiction. If after

ascertaining the amount due for the services and the use of the horse and wagon, for which the plaintiff was entitled to recover, he had adjusted the accounts between the defendants and the son which were presented by them, and after ascertaining the balance due them on that account, he had deducted it from the plaintiff's account, the result would have been the same, and the process, by which he arrived at it, more in accordance with the law and the facts of the case. The manner of stating the account, by the auditor, cannot affect the jurisdiction. The whole facts as reported by the auditor show a case clearly within the jurisdiction of a justice.

The fact that the son attempted to settle with the defendants, cannot avail them. The son being a minor at the time, could not make a settlement that would be binding upon himself, or his father. No agreement between the son and his father, of the character claimed in this case, could make any difference in this respect.

Judgment of the county court affirmed.