CHARLES CHURCH *v.* CALVIN W. FAIRBROTHER AND WALTER TAYLOR.

*Estoppel.*

The defendant T. held an execution in favor of the defendant F. against the plaintiff, and took the plaintiff's sow to apply thereon. A short time previous the plaintiff had a sow and pig, but when T. in company with the defendant F. went to make the levy they found the sow only, and on inquiry of the plaintiff, he informed them he had killed the pig a few days before. F. then asked the plaintiff what had become of the meat of the pig, telling him that if he had the meat of the pig on hand, that he, F., had the right to take, and should take, the sow on his execution. The plaintiff replied that the meat was safe, and where they could not get it, and insisted, as matter of law, that his one live hog was exempt from attachment and levy, no matter how many dead ones he might have on hand. At one time during this conversation, when F. was pressing the plaintiff to tell him where the meat of the pig was, the plaintiff replied that it was probably in the pork barrel. After discussing the point of law for some time, each adhering to his own opinion, F. said to the plaintiff, " Do you insist upon keeping the meat of the dead hog? for if you do, I shall order the officer to take the sow on the execution." The plaintiff replied, " I shall like to see you get it. I've got it, and shall keep it; but no matter how many dead hogs I've got, you have no right to take the sow." The pig was in fact killed two or three weeks before the levy. *Held,* that the plaintiff was not estopped from proving that he had not the meat of one swine on hand at the time of the levy.

ACTION to recover for a sow. Plea, not guilty, and special justification. The case was referred, and upon the report the court at the September Term, 1864, BARRETT, J., presiding, rendered judgment for the plaintiff, for the sum of $30.66, being the value and interest found by the referee,—to which the defendants excepted.

The facts found by the referee are fully set forth in the opinion of the court.

*H. E. Stoughton,* for the defendants.

*A. Stoddard,* for the plaintiff.

The opinion of the court was delivered by

PECK, J. The defendants justify the taking of the plaintiff's sow for which the action is brought, under an execution in favor of the defendant Fairbrother against the plaintiff, the other defendant Taylor being a deputy sheriff and having the execution for collection. It appears that the plaintiff had no other hog at the time of the levy and had not the entire meat of one swine. It is not

claimed by the defendants' counsel that the property in question was attachable or subject to levy, if the plaintiff is at liberty to prove and rely on the facts as to the quantity of pork he had at the time of the levy. The defendants claim that the plaintiff made such representations to them at the time of the levy in relation to having the meat of a pig he had recently killed, as to estop him from showing the real truth on that subject. After the recent decisions in this state on the subject of *estoppels in pais* no time need be spent in discussing the general principles applicable to the subject, nor have we any doubt but that these general principles are applicable to a question of the character of the one involved in this case. The real question is whether the facts found by the referee are such as bring the case within the established principles so as to estop the plaintiff.

The referee reports that a short time before the levy the plaintiff had a sow and pig. That when the defendants went on the 10th of February to make the levy they found the sow but did not find the pig, and on inquiry of the plaintiff he informed them he had killed the pig a few days before. Fairbrother then asked the plaintiff what had become of the meat of the pig, telling him that if he had the meat of the pig on hand that he, Fairbrother, had the right to take, and should take, the sow on his execution. The plaintiff replied that the meat was safe and where they could not get it, and insisted as matter of law that his one live hog was exempt from attachment and levy, no matter how many dead ones he had on hand. At one time during this conversation when Fairbrother was pressing the plaintiff to tell him where the meat of the pig was, the plaintiff replied that it was probably in the pork barrel. After discussing the point of law for some time, each adhering to his own opinion, Fairbrother said to the plaintiff, do you insist upon keeping the meat of the dead hog? for if you do, I shall order the officer to take the sow on the execution. The plaintiff replied, I shall like to see you get it. I've got it and shall keep it; but no matter how many dead hogs I have got, you have no right to take the sow.

Now it is evident that the plaintiff had no fraudulent intent to misrepresent the facts for the purpose of misleading the defendants and inducing them to make the levy. He protested throughout against their right to levy, and there is no ground to suppose the

plaintiff was not sincere in such protestations. The referee does not find any intent to deceive. But an actual fraudulent intent is 'not necessary in all cases to constitute an estoppel. Was there such false representations as operate as an estoppel? In determining this it is proper to see what the general burden of the conversation was, and the point to which the plaintiff's attention was directed. The dispute was as to the law, whether the plaintiff had a right to the meat of the pig and also to the live hog. But the attention of the plaintiff was not called to the question whether he had on hand the *whole* of the meat of the pig. It is true the defendant inquired what had become of the meat of the pig, but no particular inquiry was made whether the plaintiff still had on hand the *whole* of it, or whether he had consumed or disposed of any part of it. The inquiry was general, and so far as the plaintiff gave any answer it was general. The plaintiff's reply that the meat was safe and where the defendants could not get it, certainly was not such a representation by the plaintiff that he still had the whole meat of the pig, as to operate an estoppel. Nor could the plaintiff's statement that it was probably in the pork barrel, so operate ; it was not an assertion that it was all there and that no part of it was consumed or disposed of. That particular inquiry was not put to him, or his attention particularly called to that point. Another thing is evident, that is, that the idea in the plaintiff's mind was that the defendants intended to attach the meat of the pig, or so much of it as the plaintiff had on hand, or to attach the hog, and that the object of the defendants' inquiries were to get him to make his election which he would keep, so the defendants could attach the other, and not to ascertain whether the plaintiff still had the *entire* meat of the pig still on hand. This is evident from the last question and answer. The defendant says, "do you insist upon keeping the meat of the pig? If you do I shall order the officer to take the hog on the execution." This would not convey the idea to the plaintiff that the defendants wished to know whether he had sold or consumed any part of the meat, or whether he had the *entire* quantity on hand, or that that was regarded as material to the right of the defendants to attach either the meat or the live hog, especially as the referee finds that the plaintiff supposed he had a right to both free from attachment.

It appears that the plaintiff had the main portion of the meat of the pig on hand, and we cannot say under the circumstances that he falsely represented that he had the *whole,* or that the defendants had a right to rely on what the plaintiff said as such a representation. There is no good ground to suppose that the plaintiff was aware that he was misleading the defendants to their prejudice by not going more into the particulars in his statements. It is claimed that the plaintiff represented falsely in this, that he informed the defendants that he had killed the pig a few days before, when in fact he killed it two or three weeks before. But *a few days* is too indefinite an expression to warrant the conclusion that the plaintiff intended to misrepresent, especially as it does not appear that he was inquired of as to *when* he killed it.

It appears that the plaintiff had let his father have the hams and some other portions of the lean meat to be paid for in kind when his father should kill his pork; that the plaintiff had salted down the part usually salted, the most of which he had still on hand, and that he had consumed in his family most of the lean meat which his father did not have. If the plaintiff is to be estopped, it must be either for not telling the defendants that the plaintiff's father had a portion of the meat, or for not informing them that he, the plaintiff, had consumed a portion of it in his family. If the right of the plaintiff to hold the live hog exempt from attachment depended on the fact that the plaintiff's father had a portion of the meat of the pig, there would be some plausibility in the argument that the plaintiff ought to have informed the defendants of the fact in connection with, or as a qualification of his general statements that the meat was probably in the pork barrel; " I've got it and shall keep it." All the defendants can ask from the plaintiff's omission to communicate this fact, is to be put in the same condition as if the fact did not exist. But this does not render the live hog attachable, for it appears that aside from what the plaintiff let his father have, he had consumed in his family one-fourth of the meat of the pig. The plaintiff cannot be estopped by reason of the omission of the plaintiff to communicate this latter fact. The defendants might reasonably have presumed the plaintiff had consumed some portions of the pig in his family, and the plaintiff had no reason to suppose the defendants would un-

derstand it otherwise, especially as no particular inquiry was put to him in reference to that.

We are unable to see that the plaintiff made any representations that in law or justice estop him from showing the truth.

Judgment of the county court affirmed.