M. AGNES CLEVELAND *v.* V. W. RAND.

January Term, 1915.

Present:  POWERS, C. J., WATSON, TAYLOR, AND HEALY, JJ.

Opinion filed May 6, 1916.

*Husband and Wife—Equitable Estoppel—Reliance—Burden of
    Proof—Husband's Dealing With Wife's Property—Repre-
    sentations of Town Clerk as to Financial Standing—Pre-
    sumptions in Favor of Court Below—"Accrued."*

There can be no estoppel by acts or silence unless thereby the conduct
    of the party claiming the estoppel is changed or influenced.

Where plaintiff's husband, as between themselves, was acting as her
    agent in the management of her farm and of her personalty there-
    on, but she knowingly allowed him in his dealings with third
    persons at all times to treat that personalty as his own, she was
    not estopped to deny her husband's ownership of the personalty as
    against his creditor who did not know that the husband so
    treated the property, whose conduct was therefore in no way
    influenced thereby, and whose claim arose from a contract that
    did not relate to the management of the farm nor to the personalty
    thereon.

The duties of a town clerk in no way concern the financial responsi-
    bility or standing of the people of the town, and so any written or
    oral statement by him in that regard is merely that of a private
    person.

Where, before contracting with plaintiff's husband, a party wrote
    the town clerk asking for information as to the husband's stand-
    ing and whether he was good for $600 or $700, and the town clerk,
    getting his information from what appeared in the town clerk's
    office, answered that he considered him good for that amount,
    that he owned a small place in the village and the personalty on
    the farm where he resided, which personalty plaintiff in fact
    owned, but had allowed her husband to inventory in his own name
    for taxation, and in his own name to mortgage a part of it by an
    instrument duly recorded in the town clerk's office, plaintiff was
    not estopped to deny her husband's ownership of the personalty, as

the letter of the town clerk was merely the opinion of a private person.

A liability has "accrued" when it has become payable.

He who invokes the doctrine of equitable estoppel has the burden of establishing all of its constituent elements.

Every reasonable intendment will be made on review in support of the judgment below.

TROVER for the conversion of two bulls, two cows, one yearling heifer, and seventeen sheep, which defendant, as deputy sheriff, sold on an execution in favor of one W. H. Wright and against C. H. S. Cleveland, the plaintiff's husband. Plea, the general issue. Trial by court at the June Term, 1914, Lamoille County, *Slack*, J., presiding. Judgment for the plaintiff. The defendant excepted.

It is found that at the time of the sheriff-sale, the property in controversy belonged to the plaintiff; she purchased the heifer when a calf; she also personally traded for the sheep; her husband purchased the bulls with money, the avails of the farm mentioned below; and the cows were raised from cows purchased by either the plaintiff or her husband with the avails of the farm, or other money belonging to her. Since 1901 the plaintiff and her husband have resided on a farm in the town of Wolcott, (except when the farm has been leased,) the title to which is in the plaintiff. From the time the plaintiff purchased the farm down to the time of the sheriff-sale, she knowingly permitted her husband to manage it, and to purchase, use and dispose of the live stock kept thereon, from time to time, as though the farm and the live stock were his own, so far as third parties were concerned. The plaintiff personally made the trades above mentioned, and perhaps a few others, but in the main her husband made the purchases and sales. As between the plaintiff and her husband, he was acting for her in these transactions; but in his dealings with third persons he treated the personal property at all times as his own, and this, too, with the knowledge of, and without objection from, his wife.

The plaintiff was in Boston when her husband purchased the bulls. She was away from the farm frequently, and on some occasions for weeks at a time. During these times her husband had full charge of the farm and the personal property and managed them as he pleased. On one occasion he gave a mort-

gage for five hundred dollars on some of the personal property then on the farm, with the knowledge and consent of the plaintiff, she knowing or understanding that it was executed in his name and supposing that it would be spread upon the records in the town clerk's office in Wolcott. This mortgage did not cover the sheep in controversy. He bought horses, oxen and cows, which were placed on the farm, and which she claimed to own, for which he gave his personal lien notes. The mortgage and these lien notes were duly recorded in the Wolcott town clerk's office.

For several years before the liability to said Wright accrued, which was the basis of the execution upon which the property in question was sold, the plaintiff's husband made out inventories for the purpose of taxation, in which he set all the personal property on the farm in his name. The plaintiff did not make out any tax inventories.

On the 19th of December, 1908, Wright and C. H. S. Cleveland entered into a contract by the terms of which the latter became liable to the former in the sum of several hundred dollars. Later, a note was given, covering all, or part, of this liability, and the judgment upon which the execution was issued, was based upon this note. Before the contract was consummated, Wright wrote to the town clerk of Wolcott for information relative to the financial standing of C. H. S. Cleveland, and asked if he was good for six or seven hundred dollars. The town clerk answered by letter, in substance, that he considered him good for that amount; that he owned a small place in Wolcott village, and the personal property on the farm where he resided. The town clerk got the information which he so gave to Wright from what then appeared in the town clerk's office relative to the ownership by Cleveland of said real estate and personal property and its value. Upon receipt of this information, Wright closed the contract with Cleveland. Wright would not have made this contract except for the information so received from the town clerk. The contract did not relate to the management of the farm or the personal property, and there was no evidence that the plaintiff ever knew that Wright contemplated giving her husband credit on the strength of said property belonging to him.

*Dunnett & Leslie* for the defendant.

*F. G. Fleetwood* and *M. P. Maurice* for the plaintiff.

WATSON, J.   It is found that at the time of the sheriff-sale, the property in controversy belonged to the plaintiff.   The defendant says, however, that upon the facts found the plaintiff is estopped from asserting her ownership, and consequently to render judgment in her favor was error.   This is the sole question presented.

The statement of facts shows no finding that Wright, before entering into the contract upon which his debt against the plaintiff's husband is based, had any personal knowledge or information of any of the acts of the latter respecting her personal property, or of what she had done, or omitted to do, in connection with, or regarding, such acts of her husband; nor does it show any finding that Wright ever saw, or had any communication with, the plaintiff, before that time; nor does it show any finding that the plaintiff ever knew that Wright contemplated giving her husband credit on   the strength of her personal property on the farm belonging to him.   Therefore unless the information found to have been received by Wright from the town clerk of Wolcott, was such as in law to require a different determination, the plaintiff is not estopped from asserting her ownership of the property in question; for Wright's conduct was not in any manner changed or influenced by the plaintiff's acts or silence, without which there can be no estoppel on account thereof.   The similarity of the essential features of the case of *Bucklin* v. *Beals,* 38 Vt. 653, makes the holding there much in point.   In that case the plaintiff let his farm to one Thomas for one year at the halves, the lessee moving into and occupying, with the plaintiff, the house on the farm.   The defendant was a cattle dealer.   The action was trover for the alleged conversion of six cows and a pair of stags, which he bought of Thomas. It was conceded that the title to the cattle in question was in the plaintiff, and that under the contract and arrangement between him and Thomas, the latter had no authority to sell them; but it was claimed by the defendant that Thomas subsequently obtained permission of the plaintiff to sell or otherwise dispose of them, and it was urged that the latter, by his acts and declarations, was estopped from setting up title thereto.   The de-

fendant's evidence tended to show that sundry persons, at different times while Thomas was in possession of and carrying on the farm, went there for the purpose of buying cattle, also butter, cheese, and other products of the farm, and that the plaintiff told them in substance that Thomas did the trading, and that any trade they might make with him would be satisfactory to the plaintiff; but there was no evidence tending to show that the defendant, before making the purchase, had any knowledge of the manner of dealing between the plaintiff and Thomas and third persons while Thomas was in possession of the farm.   In disposing of the question of estoppel, this Court said: ''The court told the jury that if, from the manner in which Thomas conducted the business and managed and dealt with the stock and the produce of the farm, with the knowledge of the plaintiff, persons having knowledge of the same would, in good faith, be reasonably led to believe that Thomas was authorized to sell the stock, a sale to such persons by Thomas would give them a valid title as against the plaintiff, and that this would be true of Beals.   But as there was no evidence in the case tending to show that Beals, at the time of the purchase, had any knowledge of the manner in which the business had been conducted or of the manner in which the stock and products of the farm had been dealt with by Thomas, or tending to show that Beals had knowledge of any declaration of the plaintiff as to the authority of Thomas to sell the property, it was the duty of the court to instruct and they did instruct the jury that Beals could not avail himself of such ground of defence.   We think the charge in this respect was correct and as favorable for the defendant as he was entitled to.   To hold that the declarations of the plaintiff, under such circumstances, operate as an estoppel in favor of a person having no knowledge of them at the time of the alleged purchase, and consequently in no way misled or affected by them, would extend the doctrine of estoppel *in pais* beyond what it could be sustained by authority or upon principle.''   To the same effect are the cases of *Mason* v. *Hutchins & Co.,* 32 Vt. 780; *Wooley* v. *Edson,* 35 Vt. 214; *Earl* v. *Stevens,* 57 Vt. 474; *Wells* v. *Austin,* 59 Vt. 157, 10 Atl. 405; *Pond* v. *Pond's Estate,* 79 Vt. 352, 65 Atl. 97, 8 L. R. A. (N. S.) 212; *Vermont Acc. Ins. Co.* v. *Fletcher,* 87 Vt. 394, 89 Atl. 480; *Boynton* v. *Hunt,* 88 Vt. 187, 92 Atl. 153; *State* v. *Heaphy,* 88 Vt. 428, 92 Atl. 813.

The case of *Locklin* v. *Davis*, 71 Vt. 321, 45 Atl. 224, upon which defendant relies, is materially different in its controlling facts. There the plaintiff, a married woman, claimed to be the owner of the goods attached by the defendant, an officer, in a suit against her husband. The latter managed the business of the store, and acted in all respects as the owner and proprietor, buying, selling, and managing the business in his own name, with the knowledge and consent of the plaintiff, and there was nothing to indicate to those dealing with him that he was not, as he appeared to be, the owner and proprietor, and those who sold him goods so regarded him and treated him accordingly. Of all this the plaintiff had full knowledge, but did nothing to inform the creditors of her ownership, or that they were mistaken as to the person who was conducting the business. She further knew (similar to which there are no findings in the case at bar) that her husband bought in his own name the goods of Smith, the attaching creditor, and that Smith's salesman understood that her husband owned the business, and gave him credit on the faith of that understanding; and although she knew that Smith was extending credit to her husband on the belief that he was the proprietor, she neither said nor did anything to indicate to him or to his salesman that she owned the business or had any interest therein. It was held that in these circumstances, her silence was culpable, as it was well calculated to mislead, and did mislead, both Smith and his salesman to believe that her husband was the owner of the goods and to give him credit on the strength of such belief; and that therefore she was estopped from claiming the goods as her own, for that would be a breach of good faith on her part and fraudulent.

Did the information received by Wright from the town clerk of Wolcott, before closing the contract with the plaintiff's husband, and without which information Wright would not have made the contract, supply the otherwise missing elements necessary to constitute an estoppel against the plaintiff? Clearly it did not. By letter Wright asked the town clerk for information relative to the financial standing of C. H. S. Cleveland, and asked if he "was good for six or seven hundred dollars." The clerk answered by letter, "in substance, that he considered him good for that amount; that he owned a small place in Wolcott village, and the personal property on the farm where he resides." The town clerk got the information so given from what appeared

in the town clerk's office relative to the ownership by Cleveland "of said real estate and personal property."

The duties of a town clerk in no respect concern the "financial standing" or responsibility of the people of the town, and any statement he may make, by letter or otherwise, as to such "standing" or responsibility, is merely the statement of a private person. 1 Greenl. Ev. Sec. 498; *Lyman* v. *Edgerton*, 29 Vt. 305, 70 Am. Dec. 415. The case before us does not show that either Wright's letter to the town clerk, or the answer thereto, mentioned the records, or made any allusion to them. In effect Wright asked the opinion of the town clerk, a private person for such purpose, and the answer of the latter, that he considered Cleveland good for the amount named in the letter of inquiry, was but an opinion; and the part of the answer that the latter "owned a small place in Wolcott village, and the personal property on the farm where he resides," was of the same character so far as it related to the personal property; for concerning that he knew at most the contents of the records, whatever they were, which contents he did not undertake to state, nor are they here shown as of that time by the printed case. The findings that the plaintiff's husband on one occasion gave a mortgage, in his own name, on some of the personal property on the farm, with her knowledge and consent, she supposing it would be, as it in fact was, spread upon the records in the town clerk's office, and that he bought live stock for which he gave his personal lien notes, also recorded, which stock she claimed to own when it was placed upon the farm, have no particular bearing on the question of estoppel, it not being found that either the mortgage or the lien notes were of record at the time when the town clerk answered Wright's letter of inquiry. For aught appearing, the mortgage and the lien notes may not have been given and recorded until after the contract of December 19, 1908, was entered into. This suit was not commenced until March, 1914, more than five years later. By invoking the doctrine of estoppel *in pais*, it devolved upon the defendant to establish all the facts necessary to constitute such an estoppel. The case of *Church* v. *Fairbrother*, 38 Vt. 33, is a good illustration of the application of this rule. 10 R. C. L. Sec. 150; *Earl* v. *Stevens*, and *State* v. *Heaphy*, both cited above. And every reasonable intendment is to be made in support of the judgment. *Kelley* v. *Seward*, 51 Vt. 436.

The same course of reasoning is equally applicable to the tax inventories. The findings that "for several years before the liability to said Wright accrued, which was the basis of the execution upon which the property in question was sold," the plaintiff's husband made out such inventories, setting all the personal property on the farm in his own name, and that the plaintiff did not make out any tax inventories, point to no more definite time than that it was before the liability mentioned "accrued." By the terms of their contract, Cleveland "became liable" to Wright in the sum of several hundred dollars; but there is nothing in the record before us showing when this liability became "accrued," that is, when it became due and payable. The inventories mentioned, though for several years before the "liability * * * accrued," may all have been in years later than that of the contract.

The findings do not show that the town clerk, when he wrote the letter to Wright, had any knowledge or information touching any of the facts found pertaining to the conduct of the plaintiff; nor do they show that, through the town clerk, Wright had any such knowledge or information before his contract with Cleveland was consummated. It follows that so far as showing such facts against the plaintiff as constitute an estoppel is concerned, the defendant's case stands no better with the evidence of his information from the town clerk than it does without that evidence: the same essential elements of estoppel are lacking.

*Judgment affirmed.*