## In Re the Estate of Lulu Shufelt

[211 A. 2d 173]

April Term, 1965

Present: Holden, C. J., Shangraw, Barney and Smith, J. J.

Opinion Filed June 1, 1965

*Arthur L. Graves* for cousins.

*C. O. Granai* for husband.

**Holden, C. J.** Leo E. Shufelt and the decedent, Lulu Belle Powers Shufelt, were married on November 14, 1906. Following the marriage they maintained their home and lived together at Lowell, Vermont for more than twenty five years. In the summer of 1933, Shufelt departed Vermont for Reno, Nevada in the company of Mrs. Myrtie Bell Woods and her three children, for the avowed purpose of obtaining a divorce from the decedent.

Shortly after arrival in Reno, he instituted divorce proceedings. The decedent was notified of this action on August 15, 1933 by service of a copy of the summons and complaint at her house in Lowell, Vermont. The decedent did not appear nor plead to the complaint. The cause was heard by the Second Judicial Court of the State of Nevada on September 15, 1933 and on the same day a decree was granted purporting to dissolve the marriage between the complainant and the decedent. Immediately thereafter, Shufelt and Myrtie Woods went through a marriage ceremony which was performed by the District Judge.

Shufelt remained in Nevada for about a week after these events. He then returned to Lowell and resumed his employment with the

state highway department. All this was according to his intention when he left Vermont earlier in the summer.

Mrs. Woods came to Vermont to live with Shufelt at Lowell, in the Spring of 1934. Later the same year the State of Vermont prosecuted Shufelt for the crime of bigamy and he was confined in the State Prison for a period of about five months. He never lived with Mrs. Woods again.

. After his release from confinement, Shufelt revisited the decedent from time to time until her death. They resumed marital relations but did not live together although they both resided in Lowell.

Prior to their separation they had purchased a cemetery lot in that town. After Shufelt's release from prison, he and the decedent joined in the purchase of a monument for their cemetery lot. The decedent is buried at this site.

These are the facts established in the findings of the Lamoille County Court on appeal from the Probate Court for the District of Lamoille. Their correctness is not challenged here.

Leo E. Shufelt, the surviving husband, brought the case to county court by appeal from the decree of the probate directing distribution of the residue of the intestate estate of Lulu Shufelt to her cousins as next of kin. The county court adjudged that Shufelt was not legally divorced from the decedent by the Nevada decree of 1933 and that his marriage to Lulu Belle Powers Shufelt was in full force and effect at the time of her death on March 21, 1962. In reaching this conclusion, the county court overruled the contention of the next of kin that Shufelt, as the surviving husband, was precluded from impeaching the Nevada divorce and estopped from asserting its invalidity in the disposition of his wife's estate. This appeal by the next of kin is confined to this aspect of the order.

The problem which now confronts us has troubled courts in other jurisdictions in a variety of situations. Some involve distinctions between matrimonial actions, directly concerned with the marital status, and litigation principally concerned with private or property rights. In some instances a bar has been erected against the spouse at whose instance the foreign divorce was procured, in others, the instigator was protected. See annotations, 109 A.L.R. 1918; 122 A.L.R. 1321; 140 A. L. R. 915; 153 A.L.R. 942; 175 A.L.R. 539. None have the unusual ingredients which attend this controversy. Yet they share in common the anomalous problem of the legal force to be given to

void divorces. See Harper, The Validity of Void Divorces, 79 U. of Pa. L. Rev. 158 (1930).

Is the husband estopped from asserting his marital rights by the Nevada decree within the doctrine of *res judicata?*

It is conceded that the Nevada court had no jurisdiction of the marital status of the parties. The deceased libellee was not served within that state, neither did she appear, answer nor participate in any way in the ultimate result reached in the foreign jurisdiction. Since there was no judgment in law, apart from equitable considerations, the judgment was open to impeachment by either party, at any time, or in any way. *Alexander & Hutchinson* v. *City of Montpelier,* 81 Vt. 549, 551, 71 Atl. 720; *Boyce* v. *Sumner,* 97 Vt. 473, 482, 124 Alt. 853; *Petition of Mattison,* 120 Vt. 459, 463, 144 A. 2d 778.

The appellants, next of kin, place substantial reliance on *In re Hanrahan's Will,* 109 Vt. 108, 194 Atl. 471, to oppose this conclusion. There is a notable distinction that prevailed in the Hanrahan case. This Court held that the Massachusetts probate court, in the first instance, was without jurisdiction to adjudge the decedent insane for want of notice and opportunity to be heard. The decree subjecting the decedent to guardianship was void and of no force and effect when it was first entered. Thereafter, however, the decedent returned to the Massachusetts court with his petition to revoke the prior appointment, protesting that court's jurisdiction in the first proceedings for want of service, and claiming he was not insane. After hearing, the petition to revoke the appointment was dismissed. His attempt to appeal that decision failed.

Chief Justice Powers explained the legal effect of the subsequent proceedings to revoke the appointment of the guardian: "Though the Massachusetts probate court did not, for want of service, have jurisdiction to render judgment in the guardianship proceedings, it did have jurisdiction to consider and decide the question of that jurisdiction when raised by the petition to revoke. *American Surety Co.* v. *Baldwin,* 287 U. S. 156, 77 L. ed. 231, 237, 43 Cup. Ct. 98, 48 A.L.R. 298. It necessarily follows that its decision thereon, unappealed from or otherwise set aside, was *res judicata* as to all questions raised and considered." Estoppel was achieved on the strength of the petition to revoke, presented to a tribunal which then had jurisdiction of all parties concerned.

That is not the present case. Here there was no proceeding subsequent to the void decree to confer jurisdiction, to bar either party within the doctrine of *res judicata.*

Is the husband otherwise estopped by his procurement of the Nevada decree and his purported remarriage?

In support of the affirmative of this question, the next of kin cite *Cook* v. *Cook*, 117 Vt. 173, 86 A. 2d 923. This opinion was written on final disposition of the case upon remand from the United States Supreme Court, 342 U. S. 126, 96 L. Ed. 146. It does not aid in our question. It merely reaffirms that the Full Faith and Credit Clause precludes a party who has appeared in a foreign divorce proceeding, without questioning the jurisdiction, or one who has been served with process within the foreign state, from attacking the judgment in the courts of a sister state. *Cook* v. *Cook*, supra, at 175.

The appellants refer us to much respected authorities in other jurisdictions. *Starbuck* v. *Starbuck*, 173 N. Y. 503, 66 N. E. 193, 194; *In re Romanski's Estate*, 354 Pa. 261, 47 A. 2d 233, 235; *Krause* v. *Krause*, 282 N. Y. 355, 26 N. E. 2d 290, 292. In each of these cases strong equitable considerations in favor of intervening rights operated against the claimant.

Protection against inequitable results is recognized in the Restatement of the Law: "Any person may be precluded from questioning the validity of a divorce decree if, under all the circumstances, his conduct has led to the obtaining of the divorce decree, or for any other reason has been such as to make it inequitable to permit him to deny the validity of the divorce decree." Restatement, Conflict of Laws, §112 Comment C (1944 Supp.)

We recognize that severe and unjust results might be visited upon a spouse who relies upon a foreign divorce obtained against him or her without the application of estoppel. And as indicated in the cases cited, such consequences might reach children of a second marriage.

But the rule is not universal and of indiscriminate application when the party invoking it has not been prejudiced, and rights of others have not intervened. *Ainscow* v. *Alexander* (Del), 39 A.2d 53, 60; *Dimon* v. *Dimon* (Cal. App.), 244 P. 2d 972, 977 (modified on other grounds, 40 Cal. 2d 516, 254 P. 2d 528); 17 Am. Jur. Divorce and Separation, §529, p. 625.

A party seeking protection by equitable estoppel has the burden of establishing that he has been misled or injured by the party against whom the doctrine is invoked. *Weinberg* v. *Norton*, 107 Vt. 279, 292, 178 Atl. 913; *Neverett* v. *Towne*, 121 Vt. 447, 457, 159 A. 2d 345. The findings upon which this appeal must stand or fall are silent on this

point. And we must afford them every reasonable intendment in support of the judgment of the county court. *Cleveland* v. *Rand,* 90 Vt. 223, 227, 97 Atl. 989.

The facts stated contain nothing to indicate that the decedent or her next of kin were misled or prejudiced by reliance on Shufelt's procurement of the Nevada decree. Quite the contrary. The State intervened. (Reported in 107 Vt. 358) Although the decedent was not legally bound by that adjudication, as far as the State and the errant husband were concerned it settled the fact that his marriage to Lulu Shufelt was in full force and effect. And this was followed by the resumption of marital relations between the spouses. This was some recognition, by the wife, that her marriage to Shufelt continued in fact as well as in law.

The facts presented do not compose the essential elements of estoppel. Accordingly, we find no error in the order of the county court which denied its application against the surviving husband.

*Order of the Lamoille County Court is affirmed.*