### Roderick and Susan Fisher v. Archibald J. Poole

[453 A.2d 408]

No. 240-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed November 2, 1982

*Lisman & Lisman,* Burlington, for Plaintiffs-Appellants.

*Cleveland, Unsworth, Bennett & Bailey,* Shelburne, for Defendant-Appellee.

**Hill, J.** The plaintiffs, Roderick and Susan Fisher, appeal an order to remove that portion of their garage which was found to encroach upon the land of defendant Poole. In addition, they appeal the superior court's dismissal on the merits of their consolidated action. We reverse the order to remove the garage, and remand the entire case for further findings in accordance with this opinion.

The dispute centers around a piece of property, once owned by the defendant, located on the southerly side of Thomas Road in Shelburne, Vermont. The case was tried to the court, which found the following facts. On August 4, 1971, Roderick Fisher approached the defendant to inquire about the possibility of purchasing the property. The defendant told plaintiff that he was willing to sell the frontage property, but indicated that there was some question as to its value, since the last potential buyer had decided against the purchase due to his inability to obtain a town building permit. Confident that he

would be able to secure the necessary building permits, the plaintiff decided to pursue the sale.

On or about August 11, 1971, both parties met to inspect the property. During the inspection, they identified five of the six boundary markers. Defendant took measurements of the various property lines while plaintiff recorded them. The section of property fronting on Thomas Road, measured to be 190 feet, represented the total distance between the boundary lines of the two adjacent landowners. After taking measurements of the property, plaintiff explained to defendant his plans to build a house and garage, and the parties drove a stake into the ground marking the approximate location of the proposed structures.

The sale was conditioned upon plaintiffs' agreement to allow defendant the use of a section of the property for access to a 70-acre parcel located behind the property plaintiffs were planning to buy. The trial court characterized the condition as a "gentleman's agreement" to allow defendant to "go back to" his other land. Despite the agreement, there was no discussion as to the size and location of that section of property to be used for access.

Two days later, on August 13, 1971, plaintiffs paid the defendant $3500, the agreed purchase price of the property. There was no written purchase and sale agreement and, at the time of the payment, there was no execution or delivery of any deed. On a number of subsequent occasions, plaintiffs requested a deed to the property, but the execution and delivery of a warranty deed was not to take place until October 31, 1972.

On October 2, 1972, almost a full month prior to the delivery of the deed, the plaintiffs received a building permit for a house and garage. The permit was based on the measurements taken by defendant and submitted by plaintiffs. The plaintiffs immediately commenced construction of the garage at a point they believed to be fifty feet from the western side of the property that both parties had previously walked. Construction of the garage was completed prior to the delivery of the deed.

On October 31, 1972, a duly executed warranty deed was delivered to plaintiffs. However, the deed contained a description of the property substantially at odds with what was meas-

ured and "walked" at the August 11, 1971, inspection. Specifically, a 40-foot right of way extending along the western side of plaintiffs' property, from Thomas Road to defendant's back property, was reserved by defendant. Furthermore, defendant reserved the right to expand the right of way to 60 feet should the town zoning laws change. The plaintiffs were given an easement over the right of way for access to their house and garage. A subsequent survey of the property indicated that in fact the frontage on Thomas Road was only 180 feet. Thus, the practical effect of the deed reservation, coupled with the 10-foot mistake, was to place the garage substantially within the reserved right of way.

The plaintiffs alleged that defendant and his agents were continuously trespassing and damaging sections of their property not connected to the right of way. Plaintiffs further alleged that they were being harassed by the trespassers. Finally, the plaintiffs argued that even if a limited easement for access was reserved, the defendant had greatly exceeded its scope, therefore voiding it. The defendant denied the above allegations, demanded that those sections of plaintiffs' garage encroaching on this right of way be removed, and sought damages for the lost opportunity to sell the 70-acre parcel as a result of his inability to convey a clear right of way.

The trial court held that the 40-foot strip, as a matter of law, had been reserved by the defendant. Plaintiffs' use of the right of way was limited to access to the newly purchased parcel only. Accordingly, the trial court ordered the plaintiffs to remove the encroaching sections of the garage, since they substantially impaired the fair market value of the back parcel. It is this order, along with the trial court's dismissal on the merits of their action, that plaintiffs appeal.

Plaintiffs contend that even if defendant's reservation of the right of way was proper, he should have been estopped from challenging the location of the structure due to the totality of circumstances surrounding the transaction. We agree.

 We begin from the premise that the findings of the trial court will not be reversed unless they are clearly erroneous. *Vaughan* v. *Tetzlaff*, 141 Vt. 150, 153, 446 A.2d 356, 357 (1982) (citing *Frogate* v. *Kissell*, 138 Vt. 167, 168, 412

A.2d 1138, 1139 (1980)) ; V.R.C.P. 52(a). In situations where there is a misunderstanding between the parties as to the boundaries of the land conveyed or the amount of acreage contained therein, "resort must be had to the language of the deed, since the understanding of the parties must be deemed to be that which their own instrument declares." *Downer* v. *Gourlay*, 133 Vt. 544, 546, 349 A.2d 707, 708 (1975) ; *Haklits* v. *Oldenburg*, 124 Vt. 199, 202, 201 A.2d 690, 692 (1964). The deed is effective on the date of delivery. *Bove's Executor* v. *Bove*, 116 Vt. 76, 86, 70 A.2d 562, 568 (1950).

■ The findings indicate that the parties entered into an oral agreement to convey the property for $3500. This agreement was reflected in the warranty deed executed by the parties on October 31, 1972. The deed description provides, in pertinent part:

> Said parcel of land is bounded . . . on the west by a strip of land 40 feet in width running along the westerly boundary line of the within Grantor's property as above described. Said 40 foot strip is being retained by the within Grantor for the purpose of providing access to his remaining property.
>
> . . . .
>
> The Grantees, their heirs and assigns, shall have the use of said strip of land for the purpose of ingress and egress to the above described parcel of land as said strip runs along the westerly line of the lot herein conveyed, in common with the within Grantor . . . .

Both parties read the deed, made no objections to its provisions, and completed the formalities of execution and delivery. Although one of the plaintiffs, Roderick Fisher, testified that he did not understand the provisions of the deed, the trial court was unable to find what it was that plaintiff could not understand. Based upon the above uncontroverted evidence, the trial court properly held that the controversial right of way was, as a matter of law, retained by the defendant and was not part of the conveyance to plaintiffs. However, our inquiry does not end here, for the plaintiffs claim in the alternative that the trial court erred in failing to invoke the doc-

trine of equitable estoppel to prevent defendant from challenging the location of the garage.

■■■■■ This Court has, on numerous occasions, set forth both the rationale and the elements of equitable estoppel. "The doctrine of [equitable] estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *My Sister's Place* v. *City of Burlington,* 139 Vt. 602, 609, 433 A.2d 275, 279 (1981) (quoting *Dutch Hill Inn, Inc.* v. *Patten,* 131 Vt. 187, 193, 303 A.2d 811, 815 (1973)); *Caledonia Sand & Gravel Co.* v. *Campbell,* 128 Vt. 182, 185, 260 A.2d 221, 223 (1969). In applying the benefits of estoppel, the representations need not be fraudulent in a strict legal sense. Rather, "[t]he test is whether, in all the circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." *Neverett* v. *Towne,* 123 Vt. 45, 55, 179 A.2d 583, 590 (1962); *McLaughlin* v. *Blake,* 120 Vt. 174, 179, 136 A.2d 492, 496 (1957). In other words, equitable estoppel works to prevent one party from asserting rights which may have existed against another party who in good faith has changed his or her position in reliance upon earlier representations. *My Sister's Place* v. *City of Burlington, supra,* 139 Vt. at 609, 433 A.2d at 279. In short, the doctrine upholds the time honored maxim that equity regards that as done which ought to be done. *Stone* v. *Blake,* 118 Vt. 424, 427, 110 A.2d 702, 704 (1955).

■■■■■ One who invokes the doctrine of equitable estoppel has the burden of establishing each of its constituent elements. *Chadwick* v. *Cross, Abbott Co.,* 124 Vt. 325, 331, 205 A.2d 416, 421–22 (1964); *Cleveland* v. *Rand,* 90 Vt. 223, 229, 97 A. 989, 992 (1916). Four essential elements must be established: first, the party to be estopped must know the facts; second, the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; third, the latter must be ignorant of the true facts; and finally, the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment. *My Sis-*

ter's Place v. City of Burlington, supra, 139 Vt. at 609, 433 A.2d at 280; Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 293–94, 427 A.2d 365, 369 (1981). The doctrine will not be invoked in favor of one whose own omissions or inadvertences contributed to the problem. Id. at 294, 427 A.2d at 369.

In order to evaluate the propriety of invoking equitable estoppel in this case, we must look to the circumstances surrounding the conveyance. There was an oral agreement to convey the property for $3500. Prior to any payment of money, there was some discussion regarding defendant's need for access to his back parcel, but the discussion was at best ambiguous. The boundaries "walked" by both parties were of the full parcel, not the parcel less the 40-foot right of way. The defendant knew of plaintiffs' plans to build a house and garage and, in fact, helped the plaintiffs stake out a good location for the structures. The boundary measurements relied on by plaintiffs to obtain a building permit were provided by the defendant. Moreover, the plaintiffs did build a house and garage at the point staked out by the parties.

In short, the trial court's findings present an offer, an acceptance, a payment in full of the consideration, a newly built garage, and a family already moved in prior to the delivery of any deed. The key elements of equitable estoppel were established by the plaintiffs. In view of the circumstances, conscience and duty of honest dealing demand that the defendant be estopped from challenging the placement of the garage. Accordingly, we reverse the trial court's order to remove the encroaching sections of plaintiffs' garage.

Although estoppel has been invoked to prevent the forced removal of the garage, nothing in our holding today prevents the parties from pursuing other available options. See, e.g., Patch v. Baird, 140 Vt. 60, 66, 435 A.2d 690, 692–93 (1981). Such considerations are for the parties to decide on remand.

Plaintiffs further appeal the dismissal on the merits of their action. There, they alleged that the defendant and his agents had repeatedly trespassed on their property adjacent to the 40-foot strip, causing extensive property damage as well as harassment. Furthermore, the plaintiffs sought damages for defendant's misrepresentation of the size of the parcel con-

veyed. Uncontroverted evidence was introduced at trial to support these allegations, but the court below failed to make any related findings of fact. The issue presented is whether the trial court erred in failing to find facts related to the material issues where evidence was introduced to support said allegations, and where the plaintiffs made specific requests for such findings. We believe that error was committed.

When an appellate court is left in a position where it has to speculate as to the basis upon which the trial court reached its decision, it will refuse to so speculate. *Jensen* v. *Jensen*, 139 Vt. 551, 553, 433 A.2d 258, 260 (1981) ; *New England Power Co.* v. *Town of Barnet*, 134 Vt. 498, 502, 367 A.2d 1363, 1367 (1976). The trial court must make findings of fact upon all material issues raised by the pleadings and evidence. *Lynda Lee Fashions, Inc.* v. *Sharp Offset Printing, Inc.*, 134 Vt. 167, 170, 352 A.2d 676, 677 (1976). Indeed, the specific provisions of Rule 52(a) of the Vermont Rules of Civil Procedure state:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall, upon request of a party participating in the trial made on the record or in writing within 5 days after notice of the decision, or may upon its own initiative, find the facts specially and state separately its conclusions of law thereon . . . .

In essence, the whole idea behind Rule 52(a) is to help the trial court to a clearer statement of the theory of its decision, and to help us if the decision has to be reviewed. *Valsangiacomo* v. *Paige & Campbell, Inc.*, 136 Vt. 278, 280, 388 A.2d 389, 390 (1978) ; *New England Power Co.* v. *Town of Barnet, supra*, 134 Vt. at 503, 367 A.2d at 1367; *Wells* v. *Village of Orleans, Inc.*, 132 Vt. 216, 221, 315 A.2d 463, 466 (1974).

Plaintiffs introduced uncontroverted evidence to support their allegations of trespass, property damage, harassment, and that the actual parcel conveyed was 10 feet less than what defendant represented it to be. The trial court dismissed their action without any factual findings whatsoever. Thus, the court neglected its duty "to sift the evidence with patience and reflection." *Valsangiacomo* v. *Paige & Campbell, Inc.*,

*supra,* 136 Vt. at 280, 388 A.2d at 391; *Krupp* v. *Krupp,* 126 Vt. 511, 513, 236 A.2d 653, 654 (1967). For the foregoing reasons, we reverse the order to dismiss the action on the merits, and remand the entire action for further findings of fact.

*Reversed and remanded for further proceedings consistent with this opinion.*