Bessette v. Dept. of Corrections, No. S0303-05 CnC  (Norton, J., July 20, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                            Docket No. S0303-05 CnC


BESSETTE

v.

DEPARTMENT OF CORRECTIONS


ENTRY

This is a motion to dismiss for Plaintiffs' failure to properly serve defendant Dr. Paul Cotton within the time frame of V.R.C.P. Rule 3 in accordance with the process outlined in Rule 4(d).  Plaintiffs do not deny that service was improper but claim that this court's prior entry allowing for an enlargement of time to perfect service under Rule 6(b) and equitable estoppel prevent Dr. Cotton from making this claim.

This case is the result of a tragic occurrence. Decedent Lawrence Bessette, Jr. suffered from mental illness and was a patient in the care of the Vermont State Hospital in Waterbury. On May 22, 2003, Mr. Bessette committed suicide. His family now seeks, under a claim of wrongful death, compensation from the State of Vermont and the medical employees, who they claim failed to treat Mr. Bessette properly and prevent his suicide. They initiated this case on March 22, 2005 by filing their complaint with this court. The complaint names fifteen individuals (seven of them in their official as well as individual capacity) and three entities (including the state of Vermont. Over the next two months, Plaintiffs served defendants or obtained waivers from them.

One of the waivers was sent to Thomas Carlson, whom Plaintiffs identified as an attorney for Dr. Paul Cotton, an individual defendant. Carlson responded to this March 23 letter two days later with a letter stating that he could not waive service for Dr. Cotton but had forwarded the pleadings to him and was "confident that Paul will [waive service] in due course." Dr. Cotton did not waive service. On May 4, Plaintiffs sent a letter to Attorney Carlson requesting information on the status of Cotton's waiver. They received no response. On May 19, Plaintiffs moved under V.R.C.P. Rule 6(b) to enlarge time to complete service on the defendants, such as Cotton, who had not waived or been served. The court granted this motion on May 20. Dr. Cotton was served under V.R.C.P. Rule 4(d) on May 25.

Dr. Cotton now moves pursuant to V.R.C.P. Rule 12(b)(5) to dismiss Plaintiffs' complaint against him for failure to serve him within the two year period allowed for wrongful death claims. 14 V.S.A. § 1492. By statute, Plaintiffs had two years from Mr. Bessette's death in which to file their present claims. Id. This means that the statute expired on May 22,

2005,[1] three days before Dr. Cotton was served and one day after the sixty-day period for service under V.R.C.P. Rule 3. Thus, Dr. Cotton was not served within the time allowed by the statute of limitations in § 1492 and may be dismissed as a party.

Rule 6(b) Extension

Plaintiffs' first argument against dismissal is that they properly moved and were granted a Rule 6(b) extension and that Dr. Cotton's May 25 service came well within that period. If this was merely a question of timely service, Plaintiffs' argument would prevail, but the issue that Dr. Cotton raises is whether Rule 6(b) can also extend a statute of limitations' period. The difference is subtle but important. In the days leading up to May 22, there were two time limits approaching. The first was the 60-day period under Rule 3 in which Plaintiffs had to serve Dr. Cotton for service to be timely. The second was § 1492's two-year limit, which by coincidence was expiring one day after the deadline for Rule 3. When Plaintiffs filed for an extension through Rule 6(b), they were asking to extend the former time limit, but there is nothing in Rule 6(b), which

---

[1] Plaintiffs argue that this date should be later because they did not "discover" the negligence behind Mr. Bessette's death for several months. Cf. Lillicrap v. Martin, 156 Vt. 165, 176 (1989) (holding that the statute of limitation for a medical malpractice claim under 12 V.S.A. § 521 only runs when a plaintiff should have discovered the injury, its cause, and the existence of a cause of action). This discovery rule, however, does not apply to wrongful death actions. Unlike medical malpractice or other causes of action, the time for 14 V.S.A. § 1492 is based on the occurrence of death and does not toll or accrue upon later discoveries. Leo v. Hillman, 164 Vt. 94, 97–100 (1995). Notwithstanding any subsequent evidence of negligence, this cause of action began to accrue on March 22, 2003 when Mr. Bessette died.

suggests that it may also extend the separate statute of limitations deadline.

While Rule 3 does permit tolling of the statute of limitation, it does so so long as timely service is accomplished. <u>Weisburgh v. McClure Newspapers, Inc.</u>, 136 Vt. 594, 595 (1979). In contrast, Federal Rule 6(b), on which V.R.C.P. Rule 6(b) is taken, does not permit courts to enlarge statutes of limitation. E.g., <u>United States ex. rel. Tenn. Valley Auth. v. Easement & Right-of-Way Over Certain Land in Cumberland County, Tennessee</u>, 386 F.2d 769, 771–72 (6th Cir. 1967) (distinguishing between a jurisdictional condition created by statute and a procedural limitation to which Rule 6 addresses); <u>Hammons v. Int'l Playtex, Inc.</u>, 676 F. Supp. 1114, 1118 (D.Wyo. 1988), vacated and remanded by party stipulation, 872 F.2d 963 (10th Cir. 1989) (reasoning that the 60 days under Rule 3 was an "integral part of the statute of limitations" and any enlargement would frustrate its policies); 4B C.Wright & A.Miller, Federal Practice and Procedure § 1165, at 519–20 (2002); cf. <u>Poulos v. Wilson</u>, 116 F.R.D. 326 (D.Vt. 1987) (granting a Rule 6(b)(2) motion when defendant was served 1 day after the time for Rule 3 service lapsed but 8 days before statute of limitations ran). In the Federal system, extensions for service of process are explicitly given under F.R.C.P. 4(m). As the Vermont Supreme Court has noted, this provision was not included in the Vermont version and is not available for Plaintiffs to use. <u>Fercenia v. Guiduli</u>, 2003 VT 50, ¶ 10, n.1 (mem.). Plaintiffs' Rule 6(b) motion was not merely for Rule 3 purposes but to preserve their claim beyond the statute of limitations so that they could then effect proper service. Such a use of Rule 6(b) cannot be granted, regardless of any excusable neglect or equitable considerations. <u>Id</u>. at ¶¶ 10, 12 ("That defendants had notice of plaintiff's claim is of no moment. The issue here is . . . whether plaintiff's failure to file defendants' waiver of service within the time required by the rules constituted a failure to

properly commence plaintiff's action and toll the applicable statute of limitations.").

While this result may appear somewhat draconian, it is rooted in the twin functions of Rule 3. See Powers v. Chouinard, 138 Vt. 3, 4 (1979) (dismissing case because service was made one day late). Service of process not only notifies the defendant of the complaint and its terms but also exacts physical jurisdiction over the defendant. 4A C.Wright & A.Miller, Federal Procedure & Practice § 1094, at 511 (2002). By failing to serve defendant within the time allowed under Rule 3, plaintiffs not only failed to serve notice; they failed to effect jurisdiction. To paraphrase the Sixth Circuit Court of Appeals, the time limitation of § 1492 is a part of a statute creating the cause of action and establishing jurisdiction. This time limitation operates as a jurisdictional condition as distinguished from a procedural limitation. For this reason, Rule 6(b), relating to procedural time periods, has no application. United States, 386 F.2d at 771. While the Rule 6(b) extension may have cured the first defect, it simply could not address the second. This was, moreover, Plaintiffs' responsibility for which they bore the burden and must bear the responsibility. Weisburgh, 136 Vt. at 497; Brady v. Brauer, 148 Vt. 40, 44 (1987) ("[Plaintiffs have] the responsibility for any failure to fulfill the provisions of V.R.C.P. 4(d) and (e) . . ."). Therefore, notwithstanding this court's prior grant of a Rule 6(b) extension, Plaintiffs' service on Dr. Cotton was untimely under § 1492.

Equitable Estoppel

A defendant may be estopped from raising the statute of limitations defense in certain circumstances by either equitable tolling or equitable estoppel. Fercinia, 2003 Vt. 50, at ¶ 12. Equitable tolling in this case does

not apply to Plaintiffs. <u>Beecher v. Stratton Corp.</u>, 170 Vt. 137, 142–43 (1999) (requiring the defendant to mislead or prevent plaintiff in an extraordinary way from filing or for plaintiff to file timely in wrong forum). For equitable estoppel to apply, plaintiffs must demonstrate that:

> (1) the party to be estopped must know the facts; (2) the party being estopped must intend that its conduct be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the conduct of the party to be estopped to its detriment.

<u>Town of Victory v. State</u>, 174 Vt. 539, 540 (2002) (mem.); <u>Fisher v. Poole</u>, 142 Vt. 162, 168 (1982).

Here, the question appears to revolve around the actions of Attorney Carlson in misleading Plaintiffs. It is worth noting that while Attorney Carlson was an Attorney for Matrix Health Systems and Paul G. Cotton, M.D., PC. Attorney Carlson was not Dr. Cotton's attorney. The difference is important as Dr. Cotton, the individual named in Plaintiffs' complaint, and Paul G. Cotton, M.D., Professional Corporation, are two different entities. See 11 V.S.A. § 825 (requiring such corporations to include P.C. in their name to signify their purpose and corporate structure). On May 25 when Attorney Carlson received Plaintiffs' letter, he notified them immediately that he could not waive service on behalf of Dr. Cotton. He also told them that he had passed the waiver material on to Dr. Cotton and that he was "confident" that Dr. Cotton would waive. Plaintiffs admit that Dr. Cotton was under no duty to waive (although such a failure might have cost him in service and attorney's fees under Rule 4(l)(6)) and may even have had legitimate reasons not to waive (such as a requirement by his insurance company not to waive).

Looking, then, at Attorney Carlson's statement of confidence there is a lack of intent. At that early stage, Attorney Carlson may have honestly believed that Dr. Cotton would waive service and may have seen no reason that he would not. But his statements do not reflect any knowledge on his part about what Dr. Cotton would actually do. Furthermore, it follows a statement by Attorney Carlson disclaiming any ability to waive service on Dr. Cotton's behalf. The fact that Plaintiffs sent a follow up letter on May 4 shows that they were not completely lulled by Attorney Carlson's professed assurances. The fact that Attorney Carlson made no more statements demonstrates a lack of intent to deceive Plaintiffs. He did not continue issuing assurances and made no statements that would lead Plaintiffs to believe that he spoke on Dr. Cotton's behalf. The fact that Plaintiffs mistook him to be Dr. Cotton's attorney (and thereby agent) does not change this situation. In fact, it illustrates the real reason why Plaintiffs were lulled by Attorney Carlson's words. They believed that he was Dr. Cotton's attorney. See Beecher v. Stratton Corp., 170 Vt. 137, 139 (1999) ("All of the circumstances of the case must be evaluated in determining whether the doctrine applies, but generally it 'will not be invoked in favor of one whose own omissions or inadvertences contributed to the problem.'") (quoting Fisher, 142 Vt. at 169). This is an understandable mistake, but it was not one fostered or effectuated by either Dr. Cotton or Attorney Carlson. Equity will only intervene where the plaintiffs' situation permits it.

In the end, it is important to remember that service was Plaintiffs' burden in this case. They had a duty to make sure Dr. Cotton was served. While Dr. Cotton did not make their job any easier by refusing to waive service, he did not make it any more difficult. There is no evidence that he hid from them or instructed Attorney Carlson to issue misleading

statements.  Indeed, once Plaintiffs realized that Dr. Cotton was not going to waive service, they were able to serve him immediately.  While they made a good faith effort to effectuate such service within a narrow frame of time, it was simply too late.

Defendant Paul Cotton's Motion to Dismiss claims against him is therefore Granted.

Dated at Burlington, Vermont_____, 2005.

_____
Judge