## Nelson W. Chadwick v. Cross, Abbott Company

[ 205 A.2d 416 ]

October Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 1, 1964

*Ryan, Smith & Carbine* for plaintiff.

*Parker & Ainsworth* for defendant.

**Shangraw, J.** This is an appeal by the defendant from a judgment of the Orange County Court entered in a civil action tried by court. By its brief the defendant attacks certain findings of fact, and the judgment of $4,882.70 with interest, rendered in favor of the plaintiff.

On November 23, 1959, the parties to this action caused a corporation, known as Randolph Red & White, Inc., to be organized under the laws of the State of Vermont.

This corporation at the time of organization issued 1,000 shares of common stock, of which the plaintiff as minority stockholder held 490 shares, and the defendant as majority stockholder held 510 shares.

At the organization meeting of the corporation, the plaintiff was elected to the board of directors, and at the directors' meeting held on November 23, 1959 he was elected president and treasurer of the corporation. Mr. Chadwick continued to serve in the above capacities until January 2, 1962.

The plaintiff, the minority stockholder, decided to withdraw from the corporation as of January 2, 1962, and so notified the defendant in accordance with Article 18 of the By-Laws. At this time the stock ownership of the corporation remained the same as when the stock was first issued. Article 18, in so far as here material, reads:

> "In the event the minority stockholders decide to withdraw from the Corporation for any reason, they shall first ascertain the book value of their minority shares of stock as of the date of their notice to withdraw which notice shall be in writing to the majority shareholders. They shall notify the majority shareholders, in writing at the time of their notice to withdraw, of the said book value which shall be the purchase price for said shares of stock. Said book value shall be determined from the books of said Corporation and according to sound and accepted accounting rules and practice. The above notice to withdraw to the said majority shareholders shall be accompanied by a written opinion of a Certified Public Accountant in substance that said book value is correct and accurate to the best of his knowledge and belief. Within thirty (30) days after said notice to withdraw the majority shareholders shall tender or deliver to the minority stockholders at their home address, cash or certified or cashier's check payable to them in the amount of said book value as stated in the notice or information accompanying said notice. . . . For the purposes of carrying out the provisions of this Article, the majority stockholders shall co-operate with the minority stockholders to ascertain the book value of the shares in question."

The plaintiff engaged a firm of certified public accountants to determine the book value of his stock. In the notice to withdraw from the corporation the notice stated that plaintiff had ascertained the book value of his shares of stock as of the date of his notice to withdraw, as determined from the books of the corporation, according to sound and accepted accounting rules and practice. The book value therein stated was $114.67456 per share, a total of $56,190.53 for the 490 shares.

This was accompanied by a written opinion from the firm of accountants certifying in substance that said book value of $114.67456 per share was correct and accurate.

By accepting the book value of plaintiff's stock as determined by him and his accountants, the trial court in paragraph 12 of the findings of fact found, "That the total value of the plaintiff's minority stock, namely, 490 shares, as computed at the book value of $114.67456 per share, is $56,190.53." In arriving at this value the court determined in paragraph 11 of the findings that ". . . such figure was arrived at after a study of the corporate records as of the date of withdrawal of the plaintiff, and that in computing the item of depreciation as concerns the book value of the stock in the Corporation, the so-called straight line method of charging off depreciation expense was employed by said accounting firm."

The defendant claims that the book value of plaintiff's minority stock was $106.43307 per share, a total of $52,150.70 for plaintiff's 490 shares. This book value was determined by the defendant by the use of the so-called double declining method of computing depreciation expense.

$52,150.70 was paid the plaintiff. In this action he seeks to recover the difference between the two appraisals, together with interest on $56,190.43 computed from the date of notice of withdrawal, January 2, 1962 through April 1, 1962 at $842.87, a total of $4,882.70 reflected in the judgment order.

This controversy arises by reason of the different methods adopted by the parties in determining the book value of plaintiff's stock—more particularly the approach to depreciation write-off. Generally speaking book value of stock represents the difference between the assets and liabilities of a corporation—that is the value of the net assets.

Depreciation, under generally accepted accounting principles, is charged in such manner and in such amount as to recover the original cost of each asset over its estimated useful life and in proportion to the actual annual decrease in value of such asset. The four factors which enter into the computation of depreciation expense are: original cost, the life in years, the salvage value, and the method chosen to write off the cost of depreciable assets.

Under the straight line method of depreciation used by the plaintiff an equal amount is charged off as expense during each year of the

life of an asset. This method of depreciation allocates the cost of the asset equally over its life.

Randolph Red & White, Inc., in its bookkeeping, had used the double declining method of depreciation which was adopted by the defendant in determining the book value of plaintiff's stock. By the double declining method of depreciation a larger portion of depreciation expense accruable over the life of an asset is charged as expense in the first year, and lesser amounts in the following years. This method was sanctioned by the Internal Revenue Code of 1954. 26 U.S.C.A. §167. In addition the defendant used the arbitrary extra depreciation allowances permitted under the Internal Revenue Code for newly purchased assets. This allowance was 20 percent in the first year. Defendant increased its depreciation $2;000.00 by the use of this arbitrary method alone.

The defendant places considerable emphasis in its brief on paragraph 7 of the findings which reads: ·

"7. That the provisions of Article 18 of the By-laws constitutes a contract between the parties in entering into the corporate relations represented by the pooling of assets in the Randolph Red & White, Inc. and provides a fair and equitable means for the minority stockholder to withdraw from the Corporation and receive for his stock-equity a sum of money equal to his share of ownership as the books of the Corporation showed such value to be."

By this finding the defendant contends that it gives no latitude for the plaintiff to go outside the books of Randolph Red & White, Inc., and adopt for his then current purpose a new approach to depreciation write-off; and further, that before the plaintiff may be heard to say that he was entitled to use a straight line depreciation method he was under the compelling duty of establishing the fact that the double declining method was not a. sound and accepted accounting practice, which defendant claims the plaintiff failed to do.

To this end the evidence discloses that there are several methods of taking depreciation for various purposes. It is not disputed that the depreciation method adopted by the defendant may have been proper for some purpose, such as income tax accounting. The purpose of Article 18 was to permit plaintiff to arrive at the just and actual value of his stock. Whether plaintiff's or defendant's method is pref-

erable is not the point. By Article 18 plaintiff was given the choice of methods to be employed provided his determination of book value was determined from the books of the corporation, which was done, and according to sound and accepted accounting rules and practice. The evidence reveals that the straight line method of depreciation is a sound and accepted accounting practice, and by its use reflected a realistic and sound value of plaintiff's stock.

As bearing upon plaintiff's adherence to Article 18, the trial court made the following finding.

"17. The Court further finds that the plaintiff observed every requirement under Article 18 of the By-laws of the Corporation at the time of his withdrawal from the same in the ascertaining of the book value of his stock according to sound and accepted accounting principles."

This finding is amply supported by the evidence.

■ By finding No. 6 the trial court found that the written opinion of a certified public accountant, referred to in Article 18, which accompanied plaintiff's notice to withdraw from the corporation, ". . . was inserted in the By-laws to the end that the withdrawing minority stockholder might be fully protected against any errors, nonfeasance, mis-feasance or mal-feasance in the keeping of the corporate records by the accounting department of the defendant Cross, Abbott Company." By this finding the defendant urges that plaintiff was not allowed the privilege of determining the book value of his stock by a method of his own choice. We do not view the above quoted provisions of the finding, or Article 18 to which it is addressed, as a bind-limitation of the method of depreciation to be adopted by the plaintiff in arriving at the book value of his stock, provided sound and accepted accounting rules and practice were adopted. Reading the finding in support of the judgment, as we are required to do, it is clear that the trial court correctly regarded that sound and accepted accounting practices was the only requirement imposed.

Lastly, the defendant in its answer pleaded the affirmative defense of estoppel. It now claims that the evidence establishes this defense. It urges that the plaintiff is estopped from utilizing the straight line method of depreciation in determining the book value of the corporate stock, and is bound as a matter of law by the method used by the defendant. It is claimed by the defendant that the accounting method

adopted by the plaintiff is detrimental to the position of the defendant; that up to plaintiff's withdrawal it had been led to believe the accounting used by the corporation was acceptable to the plaintiff as a basis of evaluating the stock; and further, that plaintiff by his conduct accepted the benefit of the double declining method of accounting.

On the assumption that plaintiff as director, president, treasurer, and manager had knowledge of the corporation's accounting system, this did not foreclose him from invoking the provisions of Article 18 in establishing the book value of his stock. This Article constituted a contract between plaintiff as the minority stockholder, and the defendant as the majority stockholder—not a contract between plaintiff and the Randolph Red & White, Inc. This article might well have disregarded the actual book value and placed an arbitrary price on the stock for transfer purposes. In such event neither party could have complained notwithstanding the accounting method used by the corporation. By Article 18 the defendant has given the plaintiff the right to adopt a fair and accepted practice in determining the book value of his stock.

From the inception of Randolph Red & White, Inc., plaintiff was manager of the store at Randolph, Vermont. At the first director's meeting of this corporation it was voted that Mr. Chadwick was to receive by way of a bonus 25 percent of the net profits of the corporation in any fiscal year. For the fiscal year ending June 30, 1961 he received two checks aggregating $944.27. When the corporation was organized the defendant took over the accounting which was done at the White River warehouse. The accounting records and tax returns were prepared by the defendant. The two bonus checks were computed by the defendant—not by the plaintiff. The correctness of the checks was not verified by the plaintiff.

The use of defendant's method of depreciation decreases, not increases earnings. It can hardly be said that there was an overpayment in bonuses to the plaintiff to the detriment of the defendant. Had the corporation utilized plaintiff's method of depreciation in determining the net income there would have been reflected on the books of the corporation for the fiscal year ending June 30, 1961 a greater net income on which to compute the bonus checks.

As stated in *Boston & Main R. R.* v. *Howard Hardware Co.,* 123 Vt. 203, 211, 186 A.2d 184, "The fundamental basis for estoppel in the law of contracts is the justification for the conduct of the party claim-

ing it," citing 3 Williston, Contracts §692, at 1998 (Rev. Ed.). Estoppel involves the conduct of both parties, since it is based upon some misleading conduct or language of one person and reliance thereon by another who is misled to his prejudice. 19 Am. Jur. Estoppel, §36, at 636-7. The test of an estoppel is whether, in all circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct. *Neverett* v. *Towne,* 123 Vt. 45, 55, 179 A.2d 583.

Estoppel is an affirmative defense. 12 V.S.A. §1024. One who invokes the doctrine of equitable estoppel has the burden of establishing all of its constituent elements. *Cleveland* v. *Rand,* 90 Vt. 223, 229, 97 Atl. 989.

Defendant has produced no evidence from which it may be inferred that it relied upon the accounting method adopted by the corporation as a basis upon which plaintiff's stock was to be purchased. Its book value was governed by Article 18 of the By-laws as a matter of contract between the parties. The essential elements of estoppel are not present in this case.

The findings are supported by the evidence, and the judgment is supported by the findings.

*The judgment is affirmed.*