# Greenmoss Builders, Inc. v. Richard King, Harriet King, and King & King

[580 A.2d 971]

No. 88-108

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed August 3, 1990

*Thomas F. Heilmann* and *Janice A. Forgays* of *Thomas F. Heilmann, P.C.,* Burlington, for Plaintiff-Appellee.

*King & King,* Waitsfield, and *George E. Brooks,* Montpelier, for Defendants-Appellants.

**Dooley, J.** A builder and his lawyers parted ways. Appellee Premar Corporation/Greenmoss Builders (hereinafter plaintiff) sued appellants Richard King, Harriet King, and King & King (hereinafter defendants) to recover money allegedly owed on a construction contract. Defendants counterclaimed for an amount allegedly overpaid on an earlier construction contract. Plaintiff then added a claim for monies owed on that first contract.

The trial court entered judgment in favor of plaintiff[1] for the amount owed on the second contact, plus interest at 1½% per month from the date payment was due. The court denied defendants recovery on the first contract, ruling that defendants'

---

[1] The action was brought in the name of Greenmoss Builders, Inc. Thereafter, defendants sought successfully to join Premar Corporation, a corporation related to Greenmoss, as a party defendant. The joinder of Premar is of no consequence to the issues on appeal.

conduct subsequent to the alleged overpayment constituted a waiver of the right to pursue damages. The court also denied plaintiff's claim for additional monies on the first contract, ruling that defendants had not waived their rights as to those payments. We affirm the trial court's decision on the claim and the counterclaim, and we vacate the order to pay interest and remand the case for a recalculation of the interest to be awarded on the accrued damages.

The facts in this case, taken in the light most favorable to the prevailing party and excluding all modifying evidence, *New England Road Machinery Co. v. Calkins*, 121 Vt. 118, 120, 149 A.2d 734, 736 (1959), are as follows. Plaintiff is a construction company located in Waitsfield. Defendants are lawyers and their law firm.[2] Defendants represented plaintiff on a variety of corporate issues and represented plaintiff's principal on some personal matters. The relationship between the builder and the lawyers was, at first, a benefit to both.

Defendants hired plaintiff to do an addition on their personal residence in the spring of 1981. The construction contract, based upon the standard American Institute of Architects form contract, contained a guaranteed maximum price of $38,063. It also provided for increases or decreases to be made in the maximum price through change orders. The terms of the contract, however, were not strictly followed nor were those terms always clear.

The trial court found that the contract was ambiguous, that many of the terms were unilaterally added by defendants, and that the parties very often did not follow the provisions of the contract. The written contract was never signed by plaintiff.

Payment for the construction was made in part by crediting plaintiff's account with the law firm. Defendants actively participated in the design and oversight of the construction. Many changes were made as the construction moved forward, but formal change orders were not submitted to defendants. Each invoice contained an explanation of all charges. Payment for the

---

[2] We have not in this opinion distinguished between actions taken individually by Richard and Harriet King and those taken by the law firm. For purposes of this opinion, there is no reason to draw a distinction.

work was steady but did not follow the dictates of the written contract. Defendants paid each invoice as it came in up to a total of $45,134.35—an amount obviously in excess of the $38,063 maximum price. Plaintiff's final two invoices, totalling $6,923.68, were not paid. Although the final price, including that portion not paid by defendants, was almost $14,000 over the guaranteed maximum price, the trial court found that the price was fair and reasonable for the work performed. The court also found that defendants did not raise the issue of the overpayments until suit was filed against them for collection of funds owed on a second contract, as described below. Similarly, plaintiff never made an effort to collect the $6,923.68 billed out but not paid by defendants on the first contract until responding to defendants' counterclaim.

Despite the failure of defendants to pay the final two installments on the house contract and plaintiff's failure to perform the house contract within the maximum price, plaintiff and defendants maintained their professional relationship and entered into a second contract for renovation work in defendants' new office in February, 1983. Plaintiff agreed to do the work on a cost plus 25% basis. In lieu of cash payments, defendants were to credit the plaintiff's account, representing charges for legal services. Greenmoss did more work for defendants than initially agreed to, and the total bill for $4,474.15 was submitted by plaintiff on May 10, 1983. The trial court found the amount charged for the renovations to be fair and reasonable.

At about the same time plaintiff finished the office renovations, defendants negotiated a settlement to an unrelated lawsuit on behalf of plaintiff and presented plaintiff with a bill for $9,517.10. Defendants, however, would not honor the agreement to offset the fee with plaintiff's charges for the office renovations and required plaintiff to pay the bill in full in order to receive the settlement proceeds. Plaintiff continuously billed defendants for the office work, but the billings and a collection letter from plaintiff's present attorney were ignored. This litigation ensued.

The trial court found that defendants' payment of part of the excess beyond the maximum price on the house contract, along

with their silence, was an "acquiescence that the house contract was over and done with." It further found that defendants misrepresented their intentions regarding payment for the office job and plaintiff reasonably relied on defendants' promise that it would be paid in agreeing to do the office renovation. On this basis, it concluded that plaintiff could collect for the price of the office renovation and defendants could not collect the amount that they paid for the house addition in excess of the guaranteed maximum price. The court also concluded that plaintiff could not collect for the amount of bills that were submitted for the house contract, but were not paid, because they were above the maximum price. The court added interest to plaintiff's recovery at the rate of 1½% per month from the date of plaintiff's billing.

Defendants make three arguments on appeal: (1) the trial court erred in finding a waiver and estoppel to their claim for monies paid in excess of the maximum price on the house contract; (2) the court further erred by not awarding to them recovery where changes in the house contract terms resulted in cost decreases; and (3) the court erred in granting prejudgment interest at the rate of 1½% per month absent any agreement between the parties. We take these issues in order, but we do not reach the second argument because we affirm on the first.

■ We begin by reiterating that the findings of the trial court will not be reversed unless we find them clearly erroneous. *Fisher v. Poole*, 142 Vt. 162, 166, 453 A.2d 408, 411 (1982); V.R.C.P. 52(a). The trial court in this case did its job of sifting the evidence and stating the facts. See, e.g., *Lynda Lee Fashions, Inc. v. Sharp Offset Printing, Inc.*, 134 Vt. 167, 170, 352 A.2d 676, 677 (1976). Most of the evidence was contested. The recitation of the events by the president of plaintiff corporation differed in most crucial aspects from the version contained in the testimony of defendants. Particularly crucial to this appeal are the differences in the testimony with respect to defendants' actions and statements in making payments above the guaranteed maximum price for the house addition. Defendants' position was that they overpaid by mistake and expected their money back. Plaintiff's position was that defendants did

not overpay and never stated that they expected any money back. It was the trial court's role to resolve this conflict, and it did so. We cannot second-guess this resolution on appeal.

Although the trial court found that plaintiff never signed the contract containing the guaranteed maximum price, it apparently accepted that some contract embodying that maximum price existed. Plaintiff has not challenged this conclusion and, thus, we must accept it for purposes of this appeal. The court did not attempt to resolve whether that price had been increased or decreased as a result of modifications in the work to be done. It relied instead on its conclusion that even if plaintiff were overpaid in contravention of the guaranteed maximum price, "[defendants'] conduct effectively waived, and estopped them from asserting, any claim for return of monies and credits made above the [guaranteed maximum] . . . price."

■ There is no question that a party to a contract may lose the right to assert a term of the contract, or to require performance of a part of the contract, by waiver or estoppel. See generally W. Jaeger, 5 Williston on Contracts § 679, at 249–58 (3d ed. 1961) (sets forth nine separate, but related, theories of waiver or estoppel that will excuse nonperformance of a contract provision). Our cases recognize the application of waiver in such circumstances. See *Ejnes v. Carinthia Trailside Assocs.*, 153 Vt. 355, 360–61, 571 A.2d 49, 52–53 (1989); *Brouha v. Postman*, 145 Vt. 449, 452–53, 491 A.2d 1038, 1040 (1985); *Lynda Lee Fashions*, 134 Vt. at 170–71, 352 A.2d at 677–78. Our cases also recognize the application of equitable estoppel. See *Chadwick v. Cross, Abbott Co.*, 124 Vt. 325, 330–31, 205 A.2d 416, 421–22 (1964); *Boston & Maine R.R. v. Howard Hardware Co.*, 123 Vt. 203, 211–12, 186 A.2d 184, 191 (1962). The trial court appears to have accepted an estoppel theory.

■■ The doctrine of equitable estoppel is based upon concerns of public policy and an interest in encouraging fair dealing, good faith and justice. *My Sister's Place v. City of Burlington*, 139 Vt. 602, 609, 433 A.2d 275, 279 (1981). "[I]ts purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were

directed and who reasonably relied thereon." *Dutch Hill Inn, Inc. v. Patten*, 131 Vt. 187, 193, 303 A.2d 811, 815 (1973). The test to determine whether a party is estopped from a claim is simple: "whether, in all the circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." *Neverett v. Towne*, 123 Vt. 45, 55, 179 A.2d 583, 590 (1962).

Equitable estoppel has four elements. *Fisher*, 142 Vt. at 168, 453 A.2d at 412. The party invoking the doctrine has the burden of establishing that:

> first, the party to be estopped [knows] the facts; second, the party being estopped [intends] that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; third, the latter must be ignorant of the true facts; and finally, the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment.

*Id.* In this case, defendants knew, or should have known, that they paid in excess of the maximum price for the addition to their home. The trial court found that they made no effort to recover the alleged overpayment in order to induce plaintiff to finish the job and, later, to induce plaintiff to renovate the law firm's new offices. Plaintiff believed itself entitled to the monies paid and did not believe that defendants retained a claim for overpayment for the house addition. Plaintiff would not have finished the construction on defendants' home nor would it have undertaken the renovation of defendants' office had it known of defendants' position on the issue of payment. Estoppel can be based on silence where there is an obligation to speak. See *Boston & Maine R.R.*, 123 Vt. at 211, 186 A.2d at 191. We believe that an obligation to speak was present here to ensure fair dealing and good faith. It was not error to find that defendants are estopped from collecting the overpayment.[3]

---

[3] The relationship between these parties is relevant to the decision that an equitable estoppel occurred here. Defendants were lawyers for the plaintiff. They represented plaintiff on business matters and represented plaintiff's

Because of our holding we do not address defendants' second argument. If defendants are estopped from obtaining the return of payments made in excess of the original guaranteed maximum price, they are similarly estopped with respect to any changes in that price. Further, the trial court's finding that the charges for the renovations were fair and reasonable is supported by the record.

We now address the issue of what rate of prejudgment interest, if any, should be applied to the unpaid bill for the work done on the Kings' office. Interest is a legal right of the plaintiff. See *VanVelsor v. Dzewaltowski*, 136 Vt. 103, 106, 385 A.2d 1102, 1104 (1978). When a debt becomes payable, if the contract does not stipulate a rate of interest, the statutory or legal rate applies. See *Vermont Structural Steel Corp. v. Brickman*, 131 Vt. 144, 147–48, 300 A.2d 629, 631 (1973); Reporter's Notes to 1981 Amendment to V.R.C.P. 54. Although the trial court awarded interest at 1½% per month, it did not find that the parties had agreed to interest at this rate. We cannot find that the office renovation contract contained an agreement to pay interest at this rate. We therefore conclude that plaintiff is entitled to prejudgment interest only at the legal rate of 12% per annum. See 9 V.S.A. § 41a(a). We therefore vacate the imposition of prejudgment interest at a rate of 1½% per month through December 1, 1987 and remand for recalculation of prejudgment interest at the legal rate.

*The judgment for plaintiff Greenmoss Builders, Inc. is affirmed. The case is remanded for recalculation of prejudgment interest at the legal rate specified in 9 V.S.A. § 41a(a).*

---

principal on personal matters. It is clear that plaintiff relied, in part, on the fiduciary relationship it had with defendants in taking the actions it did. The nature of the relationship increased defendants' obligation to insure its actions were candid and fair.