**Christopher REED d/b/a Chris Reed Construction v. Karl ZURN and Jane Zurn**

[992 A.2d 1061]

No. 08-489

¶ 1. March 1, 2010. Defendants Karl and Jane Zurn appeal the superior court's judgment awarding plaintiff Chris Reed Construction damages based on defendants' refusal to pay for work performed pursuant to contracts in which plaintiff agreed to clear land and build roads and septic mounds for defendants' planned development. We affirm.

¶ 2. In the fall of 2004, defendants hired Trudell Consulting Engineers (TCE) to develop plans and supervise construction for eight housing sites on a twenty-two-

---

acre portion of defendants' four-hundred-acre parcel in Bakersfield, Vermont. They also retained a company called LandVest to act as their agent in supervising the logging operations on the property. TCE solicited bids for the project, and on November 23, 2004, Chris Reed, Karl Zurn, and the TCE representative overseeing the project signed a one-page bid form submitted by plaintiff for completion of the construction work. One week later, the parties signed a stumpage contract prepared by LandVest. Work began, and in early January 2005, plaintiff presented its first invoice to the TCE representative, who reviewed the bill and suggested changes before recommending to Mr. Zurn that he sign it. Based upon TCE's recommendation and his own review, Zurn paid the bill on January 12, 2005. Plaintiff submitted a second invoice to the TCE representative in June 2005, and, as before, Zurn signed it based upon TCE's recommendation and his own review. In early August 2005, plaintiff submitted two more invoices, one pertaining to the construction contract and the other pertaining to clearing topwood and debris from the house sites. On August 26, 2005, TCE sent plaintiff a termination notice, and defendants refused to pay the invoices or make any further payments to plaintiff.

¶ 3. In January 2006, plaintiff filed a complaint seeking damages for defendants' breach of contract. Defendants counterclaimed that plaintiff overcharged them and billed them for unauthorized work. Following a three-day bench trial in January 2008, the trial court determined that defendants were liable to plaintiff in the amount of approximately $60,000, and plaintiff was liable to defendants in the amount of approximately $20,000. The court also awarded plaintiff interest, penalty interest, and attorney's fees based on its conclusion that plaintiff was the substantially prevailing party. In response to defendants' motion to amend, the court adjusted the counterclaim damages and entered a judgment of $101,443, representing $36,451 in compensatory damages, $27,347 in regular and penalty interest, and $37,645 in attorney's fees and expenses. Defendants appeal, arguing that the trial court erred by failing to enforce the plain language of the stumpage contract and by awarding penalty interest and attorney's fees under the Prompt Pay Act (PPA). See 9 V.S.A. §§ 4001-4009.

¶ 4. The trial court's decision contains extensive findings of fact, most of which defendants do not contest. Rather, they argue primarily that the court erred in: (1) compensating plaintiff for logging in the eight-lot development site even though the contract provided that plaintiff would receive no payment for that logging and plaintiff never finished it; (2) awarding interest and attorney's fees under the PPA even though plaintiff failed to submit monthly invoices and the ones he did submit were misleading and contained numerous improper charges; (3) awarding PPA interest and damages without a finding that defendants acted in bad faith; and (4) concluding that defendants waived their objections to charges contained in the invoices that they paid. We address the claims in order.

¶ 5. Defendants' first argument concerns the trial court's decision to compensate plaintiff for removing topwood and debris from the twenty-two-acre subdivision site. Defendants assert that the decision is inconsistent with the plain language of the stumpage contract. They further argue that the court failed to find that the relevant contract provision was ambiguous and thus violated the parol evidence rule by basing its decision on a purported oral assurance given to plaintiff by defendants' agent before the parties signed the contract. In support of this argument, defendants cite an integration clause stating that the contract contained all of the conditions of the sale and that none of its terms could be modified except

in writing by defendants. Defendants also contend that the trial court compounded its error by applying the doctrine of promissory estoppel even though there was a written contract. Plaintiff responds that the trial court's findings concerning misrepresentations by defendants' agent effectively rendered the stumpage contract void, thereby nullifying any objections based on the parol evidence rule or the limits of promissory estoppel.

¶ 6. The stumpage contract contained the following clause headed under the title "Special Conditions":

> The PURCHASER [plaintiff] shall remove and either chip or burn all debris and topwood from the 8 lots comprising the real estate and construction portion of this sale. Outside of this area traditional logging with or without tops removed can be employed. To cover cost of handling the debris and tops in the construction area there will be no stumpage paid on any and all chips sold from the area.

This provision went on to indicate that, with respect to the area outside the eight-lot development site, plaintiff would pay a stumpage fee for timber removed and would not be required to remove topwood. On the other hand, with respect to the development area, which apparently contained more brush than valuable timber, there would be no stumpage fee, but plaintiff would be required to clean up the area. It was contemplated that compensation for the cleanup would result from the sale of wood chips from this area, without any stumpage fees.

¶ 7. During the first day of trial, plaintiff's attorney asked one of plaintiff's employees, Lance Reed, what defendants' agent told him with respect to plaintiff's compensation for disposing of waste wood. When the witness stated that defendants' agent told him that he could sell the wood chips to Burlington Electric Department (BED), defendants' attorney objected, stating that the contract spoke for itself and that whatever discussions led up to the contract were rendered irrelevant by the parol evidence rule. Plaintiff's attorney responded that he was merely trying to establish the background for the language in the contract. The court ruled that it would admit the evidence as setting a foundation for the contract, but encouraged defendants' counsel to renew his objection later if need be. At that point, plaintiff's attorney began going over the contract provisions with the witness. The witness, during his testimony, stated without objection that when he learned that BED would not accept chips from the eight-lot development site for environmental quality reasons, he called defendants' agent, who assured him he would do the right thing by plaintiff.

¶ 8. The next day of trial, a forester for BED testified that he had informed defendants' agent that BED would not accept chips from the eight-lot development site and that in fact defendants' agent had submitted an application for the sale of chips only from the back area of defendants' property. The testimony demonstrated that defendants' agent knew before he met with plaintiff's principal to sign the stumpage contract that BED would not accept any chips from the eight-lot development site. Defendants' attorney did not object to this testimony and in fact cross-examined the witness. Following the forester's testimony, plaintiff's principal, Chris Reed, testified that defendants' agent told him before the stumpage contract was signed that the agent had met with someone from BED and would have the sale of the chips to BED preapproved by the time work started on the site. Again, defendants' attorney did not object, but instead cross-examined the witness. Further, the next day at trial, defendants' attorney elicited

testimony from defendants' agent contradicting the statements of plaintiff's principal and employee. Defendants' agent testified that he informed plaintiff that BED would not be accepting wood chips from the development site. He also testified that the Reeds expressed little concern about getting paid for the chips, telling him that it was a small amount of wood and that they could burn it at little cost.

¶ 9. In its decision, the trial court found that defendants' agent induced plaintiff to sign the stumpage contract by representing that plaintiff could sell wood chips from the site to BED as compensation for clearing the area, even though the agent knew this to be false. The court also found that after plaintiff learned that BED would not accept wood chips from the site, defendants' agent further induced plaintiff to continue work by assuring them that he would "do the right thing" by them. Based on these findings, the court awarded plaintiff $16,500 as compensation for removing topwood and debris from seventy-five percent of the eight-lot development site.

¶ 10. Defendants do not challenge any of the court's findings, but rather argue that the trial court violated the parol evidence rule by admitting evidence of conversations preceding the signing of the contract before first finding the contract to be ambiguous. We conclude that defendants waived this argument by failing to raise it adequately before the trial court. It is true that defendants' attorney initially objected to Lance Reed's testimony concerning what defendants' agent had told him about BED and that the court overruled the objection. However, the court also indicated that it would limit the testimony to foundation evidence and expressly invited defendants' attorney to renew his objection later if need be. Instead of objecting to later testimony directly addressing the alleged oral assurance made by defendants' agent, defendants' attorney cross-examined plaintiff's principal on that point and offered the testimony of defendants' agent to dispute it. Under these circumstances, defendants' objection to the testimony was inadequate and thus waived. See *In re Entergy Nuclear Vt. Yankee, LLC*, 2007 VT 103, ¶ 10, 182 Vt. 340, 939 A.2d 504 ("Preservation requires a party to present the issue with specificity and clarity to give the original forum a fair opportunity to rule on it." (quotations omitted)).

¶ 11. While defendants have argued this issue primarily as an evidentiary objection, they appear also to question whether the court employed a valid theory to award plaintiff the cost of its logging work in the eight-lot development site. Plaintiff urges us to affirm on the basis that the court found that defendants fraudulently induced plaintiff to do the logging work and therefore must pay for it. That theory might support an award of damages based on plaintiff's lost profits from the proceeds of the sale of the wood chips, but the trial court adopted a narrower theory based on fair dealing when it awarded plaintiff only reimbursement costs. See *Neverett v. Towne*, 123 Vt. 45, 55, 179 A.2d 583, 590 (1962) (stating that if "in all the circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct," estoppel will enforce the representations). It relied upon the elements of unjust enrichment: whether "(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." *Center v. Mad River Corp.*, 151 Vt. 408, 412, 561 A.2d 90, 93 (1989). Certainly, based on the court's findings in this case, it would be inequitable for defendants to retain the benefit of plaintiff's logging to clear the site for defendants' development. Plainly, the agreement

anticipated the sale of chips from the development site as a form of compensation.

¶ 12. We also reject defendants' other arguments related to compensating plaintiff for clearing the brush and debris at the development site. Defendants argue that the court's reliance on the principle of quantum meruit was clear error because they had already paid for the clearing work by agreeing not to charge plaintiff a stumpage fee for that area. As indicated above, however, the contract provision anticipated that plaintiff would be paid for chips from the development site, but ultimately plaintiff was unable to sell the chips to BED, contrary to the oral assurance made by defendants' agent. As for defendants' claim that plaintiff failed to mitigate its damages by selling the wood chips to another buyer, defendants did not make any such argument until their post-judgment motion, when, in a single sentence, they merely cited the testimony of their agent stating that other markets existed. The cited testimony did not indicate any particular available market and did not serve as a substitute for a timely legal argument that plaintiff failed to mitigate its damages. Thus, this argument was not preserved for review on appeal.

¶ 13. Finally on this point, defendants complain that they incurred expenses in clearing debris from the same area that the court compensated plaintiff for clearing. The court made no finding concerning any cleanup work that remained at the site following plaintiff's termination, but found, rather, that plaintiff had completed only seventy-five percent of the work at the time defendants terminated plaintiff's contract. Based on its unjust enrichment theory, the court compensated plaintiff only for the value of the work that it completed. Defendants' claim that plaintiff should have completed the work is no defense when defendants terminated the contracts and barred plaintiff

from the job. Defendants have failed to demonstrate any error with respect to the trial court's decision to compensate plaintiff $16,500 for clearing the development site.

¶ 14. Next, defendants argue that the trial court erred by awarding plaintiff interest, penalty interest, and attorney's fees under the PPA. According to defendants, the PPA does not apply because plaintiff failed to submit monthly invoices and because the invoices they did submit were misleading and contained numerous overcharges. We need not address these arguments, as they are raised for the first time on appeal. See *Entergy Nuclear,* 2007 VT 103, ¶ 10 (stating that to preserve issue for appeal, party must present issue with specificity and clarity). In any event, they lack merit.

¶ 15. The PPA plainly does not condition its application upon a contractor submitting monthly invoices, as defendants claim. Defendants rely upon 9 V.S.A. § 4002(b), which states that unless otherwise provided in the construction contract, "the contractor shall be entitled to invoice the owner for progress payments at the end of the billing period." The billing period is the period agreed to by the parties or, in the absence of an agreement, "the calendar month within which work is performed." *Id.* § 4001(8). The plain meaning of the statutory language is that the contractor is entitled to submit progress invoices monthly, in the absence of an agreement otherwise, but is not required to do so. Plaintiff is not denied the protection of the PPA because it did not bill monthly.

¶ 16. Nor is the PPA inapplicable because defendants prevailed on one of their many claims against plaintiff — that plaintiff failed to put down additional gravel before widening a road. The PPA requires the court to award attorney's fees to the party it finds has substantially

prevailed. See 9 V.S.A. § 4007(c);[1] *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 10, 178 Vt. 77, 872 A.2d 292. The trial court has discretion in determining which party, if any, "substantially prevailed." *Fletcher Hill*, 2005 VT 1, ¶ 12. In this case, the court exercised that discretion in favor of plaintiff. The court found that plaintiff was the clear victor despite defendants' partial success on one of its counterclaims. Plaintiff prevailed on a large number of its claims, but defendants prevailed on only one of many. Plaintiff had a net award of over $36,000. We find no abuse of discretion.

¶ 17. Nor are we persuaded by defendants' rehash of their claims against plaintiff under the heading that the PPA should not apply. Each of their other claims was thoroughly analyzed by the trial court and rejected. Again, we see no error.

¶ 18. One of defendants' PPA arguments was preserved, at least in part, and we address it specially.[2] Defendants argue that the trial court's award of statutory interest and attorney's fees under the PPA must be vacated because the court failed to make an essential finding that they did not act in good faith in refusing to pay plaintiff the amounts set forth in the final invoices submitted after defendants terminated plaintiff. See 9 V.S.A. § 4007(a) (nothing in PPA prevents owner or contractor from withholding

payment "in an amount equalling the value of any good faith claims against an invoicing contractor or subcontractor"); *id.* § 4007(b) ("An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against which an invoicing contractor or subcontractor is seeking to recover payment."); see also *Fletcher Hill*, 2005 VT 1, ¶ 19 (concluding that trial court did not abuse its discretion when it declined to apply contract's late fee provision because defendant had good faith basis for withholding outstanding balance).

¶ 19. According to defendants, they withheld payment based on their engineer's advice and thus, at worst, they merely miscalculated what they believed they owed plaintiff. We find this argument unavailing. Defendants raised this issue directly for the first time in their motion to amend the judgment. The trial court responded by finding that (1) defendants' agents oversaw and authorized plaintiff's work before advising defendants to pay the first two invoices; (2) the agents continued to oversee plaintiff's work on the project until defendants abruptly terminated plaintiff; (3) defendants' agents authorized work that defendants later decided they did not want to pay for; (4) defendants were responsible for most of the misunderstandings that arose between the parties; and (5) the amounts claimed by plaintiff were readily ascertainable, but defendants did not want to pay them. In context, these statements by the court were intended to describe its reasoning for concluding that defendants did not act in good faith. The record and the court's findings are replete with evidence of Mr. Zurn's close involvement in the project, his knowledge and approval of the work plaintiff was doing, his payment for that work based on the first two invoices and his agents'

---

[1] Defendants attack primarily the standard for awarding attorney's fees. The court also awarded statutory interest under 9 V.S.A. § 4007(b). The standard for award of this interest is that defendants "failed to comply with the payment terms" of the PPA. *Id.* That standard is also met in this case.

[2] Defendants preserved this argument with respect to statutory interest, but did not explicitly make the argument with respect to attorney's fees. We accept that the preservation was sufficient for both.

advice, his abrupt decision to terminate plaintiff, and his refusal to meet with plaintiff to discuss their differences. If defendants could avoid application of the PPA merely by contesting the legitimacy of the charges, notwithstanding the parties' course of dealing, the PPA would rarely, if ever, be applicable. See *The Electric Man, Inc. v. Charos*, 2006 VT 16, ¶ 12, 179 Vt. 351, 895 A.2d 193 (stating "practical and policy reasons to apply [PPA] relatively broadly" and noting that owners will routinely raise breach of contract or defective workmanship defenses, thereby avoiding application of PPA if attorney's fees authorization is read narrowly). In short, there was a sufficient finding of a lack of good faith in this case.

¶ 20. Finally, defendants argue that their prompt payment of the first two invoices, without their full knowledge of the true facts, did not ratify the improper charges or waive their objections to plaintiff's invoices, as the trial court found. See *Estate of Sawyer v. Crowell*, 151 Vt. 287, 293, 559 A.2d 687, 691 (1989) (noting that "[a]ffirmance alone [does] not necessarily bind a principal who acts upon incomplete or inaccurate information"). This issue relates to the construction contract, which was a one-page list of "Bid Prices" with the proviso that "[a]ll total prices (except Item 1 [the price of the septic mounds]) will vary depending upon quantity." The terms were essentially oral, and, as the trial court found, "[c]hanges and additions to the scope of the work due under the Contract began immediately." Although Mr. Zurn was directly involved in the project, plaintiff communicated with TCE representatives. These communications produced changes in the contract that were memorialized in plaintiff's invoices.

¶ 21. There are multiple reasons why defendants' arguments are inadequate. The main one is that the court reached its result based on a number of rationales, each of which was independently suffi-

cient. While the court relied upon waiver, it equally grounded its decision on estoppel. Further, it held that the individual items defendants wanted to contest were approved by TCE as change orders and TCE had at least apparent authority to enter into contract additions on behalf of defendants. Finally, the court analyzed each of the items defendants wanted to contest and found that the work had been authorized by defendants' representatives with defendants' knowledge, except for plaintiff's failure to add the extra gravel to a road, for which the court awarded damages to defendants. Defendants have not challenged these additional independent grounds for the court's decision. Absent a challenge to all grounds for the decision, their assertion of error in the waiver theory, even if correct, cannot result in reversal of the judgment against them. See *John A. Russell Corp. v. Bohlig*, 170 Vt. 12, 18, 739 A.2d 1212, 1218 (1999).

¶ 22. Further, we find the additional rationales to be correct. In reaching its conclusion on estoppel, the court relied upon the theory in *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 580 A.2d 971 (1990). In *Greenmoss Builders*, business owners, a husband and wife, hired the plaintiff builder to put an addition on their personal residence. There were many additions to the work in the course of construction, and the plaintiff submitted bills well over the original price, most of which the defendants paid. Thereafter, the plaintiff performed some renovations on the defendants' office premises, and the defendants refused to pay for that work, citing that they had overpaid on the residence project. This Court noted that equitable estoppel has four elements and each applied in the case: (1) the party to be estopped must know the facts; (2) the party being estopped must intend that its conduct be relied upon or the party asserting estoppel has a right to believe that the conduct is so intended; (3) the party

asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct of the party to be estopped to its own detriment. *Id.* at 7, 580 A.2d at 974-75. We held that the defendants had a duty to disclose that they believed they overpaid for the residence addition before inducing the plaintiff to do the office renovation work. *Id.* at 7, 580 A.2d at 975.

¶ 23. For the same reason that we found that estoppel applied in *Greenmoss Builders*, the trial court found that estoppel applied here. Although defendants paid plaintiff's first two invoices, they believed that they overpaid, specifically for work that they had never authorized. They failed to disclose this belief, however, and plaintiff did $43,000 of additional construction work after the second invoice was paid, oblivious to defendants' objections to their already-paid bills. When plaintiff billed for the $43,000, defendants refused to pay it, asserting that they overpaid in the past. As in *Greenmoss Builders*, we agree that defendants had a duty to speak out and not let their silence induce plaintiff's additional work. *Id.* (finding defendant had an obligation to speak to ensure fair dealing and good faith). Thus, we cannot let defendants raise the prior asserted overpayment as a defense to plaintiff's claim for payment of the third and fourth invoices.

¶ 24. We also note that the work for which defendants asserted they overpaid was approved by TCE, and TCE informed defendants of plaintiff's actions. TCE was defendants' agent. Although there was a dispute over the actual authority given by defendants, the trial court held that defendants' actions gave TCE at least apparent authority to bind them when acting with respect to plaintiff. See *Doe v. Forrest*, 2004 VT 37, ¶ 23, 176 Vt. 476, 853 A.2d 48 (apparent authority derives from action of principal, communicated to third party, which rea-

sonably leads third party to rely upon agent's authority). We agree that defendants' actions gave TCE apparent authority to negotiate with plaintiff and approve plaintiff's bills. The very basic contract required an agent to work out the details of the job. Defendants communicated with plaintiff through TCE. TCE kept defendants fully informed of the nature and scope of plaintiff's authorized work. Therefore, defendants could not repudiate approvals TCE gave in negotiating plaintiff's invoices.

*Affirmed.*