Dupuis v. Haven Health Ctr., No. 676-9-10 Rdsc (Teachout, J., Feb. 28, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 676-9-10 Rdsc** |

**Rachael Dupuis**
    **Plaintiff**

    **v.**

**Haven Health Center and**
**TC Healthcare, LLC**
    **Defendants**


## DECISION

The hearing in this small claims case was held on December 12, 2010. Plaintiff Rachel Dupuis was present and represented herself. Attorney Timothy D. Connelly was present and represented Defendant TC Healthcare, LLC.

Ms. Dupuis filed this small claims case against both Haven Health Center and TC Healthcare, LLC for the amount of $4939.36. Both named Defendants were mailed a Notice to Defendant of Service by Mail, to separate addresses. TC Healthcare, LLC (hereinafter TC) filed an acknowledgement of receipt of summons and complaint, and Attorney Timothy D. Connolly of Dinse, Knapp & McAndrew, P.C., filed a Notice of Appearance and Answer and represented TC at the hearing.


### Procedural Matters

At the hearing, Ms. Dupuis presented evidence in the form of her own testimony and documents. TC's attorney attempted to explain facts on behalf of TC relating to TC's position that it had no liability because it acquired parts of the Haven Health Care business but not liability for Ms. Dupuis's claim. The court ruled that it could not accept those representations as admissible evidence because they were not offered through a witness under oath. TC's attorney vigorously urged the court to accept his representations as TC's attorney on the grounds that small claims hearings were informal.

Although the small claims court uses an informal and flexible procedure to adjudicate cases, nothing in the statute or rules provides that the heart of any trial—witness testimony—is not necessary to adjudicate facts. It is clearly contemplated that witnesses will appear. See V.R.S.C.P. 6(a); see also *RAB Performance Recoveries v. Swanson*, No. S2171-09 Cnsc (Vt. Supr. Ct. Oct. 20, 2010) (Toor, J.), available at http://www.vermontjudiciary.org/2006 Present%20TCdecisioncvl/2010-10-25-3.pdf. The statements of attorneys are not evidence. *Gagne v. Lasorda*, 137 Vt. 614, 615 (1979) ("[N]othing in the small claims procedure…authorizes treating an attorney's statement as evidence."). By producing no

witnesses, TC waived its opportunity to present evidence at the hearing. While TC's attorney was present to cross-examine witnesses and argue weaknesses of the case presented by Ms. Dupuis, TC provided no admissible evidence to controvert Mr. Dupuis's evidence.

Several days after the hearing, TC moved to supplement the record and attached an affidavit and documents for the court's consideration. Ms. Dupuis understandably filed a response, resulting in further filings. In all, there were four additional filings and responses after the hearing.

A trial court does have discretion to allow additional evidence after a hearing for good cause; however, where there is no good reason that the proffered evidence could not have been introduced at trial, it is not an abuse of discretion for the court to refuse to admit the evidence submitted after the trial. See *Gazo v. Gazo*, 166 Vt. 434, 447 (1997). Small claims hearings are summary hearings, V.R.S.C.P. 6(a), intended to start and finish in one session. Obviously, when documents are submitted after trial, there is no witness testimony to identify or support the documents, and no opportunity for cross-examination, which is guaranteed in small claims hearings. V.R.S.C.P. 6(a). Both are fundamental to the integrity of due process in all trials, regardless of the informality of style.

Moreover, if relying on documents after trial were to be an accepted practice, the purpose of the summary small claims process would be defeated and the courts would become clogged. Here, TC presents no valid reason why it could not have introduced the proffered evidence at the hearing. TC should have known that the hearing was its opportunity to present evidence through witnesses. V.R.S.C.P. 6(a). After the hearing was over, TC sought to have the court rely on documentary evidence in the form of a faxed affidavit with attachments. This procedure is improper, even in small claims proceedings. See *Swanson*; see also *Vermont National Bank v. King*, 135 Vt. 551, 552 (1977) (stating that it is not proper to use affidavits in place of live testimony on contested evidentiary matters).

Moreover, it would prejudice Ms. Dupuis to grant the Motion to Supplement, as either the court would rely on the evidence without giving her an opportunity to cross-examine, which would be improper and unfair procedure, or it would require the reopening of the hearing resulting in the need to call her back for a second session to continue the hearing. She was prepared to present her evidence at the time of the scheduled hearing and did so.

Finally, only certain specific motions are permitted under the small claims rules, and TC's Motion to Supplement the Record is not an authorized motion. V.R.S.C.P. 4. Otherwise, motion practice is excluded from small claims procedure. The small claims rules include no counterpart to V.R.C.P. 59, which provides a procedure upon motion for seeking to reopen a hearing or for a new trial.

For the foregoing reasons, the court denies Defendant's Motion to Supplement the Record.

The findings of fact set forth below are based on the credible evidence admitted at the time of the hearing.

Rachel Dupuis has worked as an LPN at the Haven Health Center in Rutland for 11 years. In 2007, the name her employer used on a contract document it offered her was Haven Healthcare. "HHC Management" also appears in typed form as "Employer" at the end of the document. Other evidence (Exhibit #7) suggests that its full name at that time was Haven Healthcare Management, LLC. It is a Connecticut company.

Throughout her employment at the Haven Health Center, she has received salary and benefits, including health insurance, through her employer without interruption, except with respect to the subject of this case. Her current health insurance benefits are out of Connecticut, as they were in 2007.

In 2007, Ms. Dupuis took advantage of one of the benefits offered by her employer, which was a reimbursement program for higher education. She wanted to become an RN. She went to the business office and was offered a contract from Haven Healthcare under which she would pursue an RN program, pay the cost herself, and then be reimbursed by her employer as long as certain conditions and requirements were met. At all times she has met the conditions and requirements. The maximum benefit was $5,000. On May 10, 2007, she signed the contract offered to her at the business office (Exhibit #1). It is unsigned by "HHC Management."

After signing the agreement with her employer, she contracted with Chancellor's Learning Systems to take an RN course with a total contract amount of $4,925, although there were additional fees charged for items such as taking progress tests. The arrangement was that she would pay $100 per month on the contract.

Although the Haven Healthcare Tuition Payment Program contract (Exhibit #1) states that the tuition would be paid directly to the educational institution, the actual arrangement used was that she made direct payments to Chancellors, and then submitted Employee Expense Reports to her employer for reimbursement.

The evidence shows that Haven Healthcare Management, LLC filed for bankruptcy protection in November of 2007. There was no change in her employment status, however, and she continued to receive pay and benefits for her work at Haven Health Center without noticing any change. She never received any notice of change or attempt to terminate any employment benefits, including the tuition reimbursement program in which she had enrolled. She did not know about the bankruptcy, or any other changes in the status of her employer.

She submitted requests for reimbursement on the following dates and received reimbursement payments in the following amount from her employer:

| | |
|---|---|
| 1/9/08 | $207.98 |
| 2/11/08 | 202.95 |
| 5/12/08 | 306.90 |
| Total | $717.83 |

On August 27, 2008, she submitted a request for reimbursement for two payments she had made, $160.00 and $250.85, totaling $410.85. Her request was denied.

On that day, August 27, 2008, she spoke with Susan Black in the payroll and benefits office of her employer. Susan Black had worked with her at Haven Health Care since 2001, and knew that Ms. Dupuis had been reimbursed for tuition payments under the tuition reimbursement program. Susan Black told her then, for the first time, that HHC no longer owned the business, and that TC Healthcare was now the owner. Ms. Black told her that TC Healthcare had taken over HHC's debts, and should now pay her under the reimbursement program. At some point Susan Black was instructed by Haven Healthcare to forward all payroll and business office records through the end of 2007 to Haven Healthcare's corporate office in Connecticut.

Because Ms. Dupuis was told that her request for reimbursement was denied, she knew that she could no longer afford to continue the RN program without tuition reimbursement, and she dropped out.

Chancellor's Learning Systems sued her in Washington County, New York, where she lives, for a balance of $3,515.85 due on the contract plus interest and attorneys fees in the sum of $703.17. While the case was progressing she paid $800 through the attorney's office in order to avoid having her wages garnished. On December 28, 2009, Chancellor's received a judgment against her in the amount of $3,500.72, consisting of principal of $2,715.85, interest, and court costs and fees, for a total of $3,500.72. She still owes this money. All of it is based on her debt to Chancellor's under the contract for the RN program.

She has contacted both Haven Healthcare and TC Healthcare seeking reimbursement for the obligations she has paid and now owes due to denial of the health care reimbursement benefit. She received a letter dated September 2, 2010 from an attorney for TC Healthcare I, LLC stating that "Haven" had gone into bankruptcy in November 2007. "During Haven's bankruptcy, it did not assume, and TC Healthcare was not assigned, the Contract. Therefore, as a matter of law, TC Healthcare has no liability to you under the terms and condition of the Contract or otherwise."

Ms. Dupuis continues to work at the Haven Health Center. Neither her pay nor any other employee benefits have been terminated or affected by the change in ownership, except for tuition reimbursement.

On December 28, 2009, the Supreme Court of the State of New York, Washington County, entered Judgment against Ms. Dupuis on the obligation to Chancellors for $3,500.72, of which $264.87 was interest at an annual rate of 9%. She had previously paid $800 toward this debt. The present amount of the full obligation is thus $3,500.72 + the $800 already paid = $4,300.72 + interest to the present.

4

## Conclusions of Law

Ms. Dupuis's testimony at trial was sufficient to prove her claim for reimbursement and consequential costs. In May of 2007, she signed a contract with her employer entitling her to tuition reimbursement. All terms of her employment continued without interruption and without notice to her, despite the bankruptcy and changes in ownership, until August of 2008, when, without prior notice, her employer refused to honor the tuition reimbursement agreement.

Under the doctrine of equitable estoppel, TC cannot now deny Ms. Dupuis's claim to the continuation of tuition reimbursement payments under the agreement. Equitable estoppel has four elements: 1) the party to be estopped knows the true facts, 2) the party being estopped intends that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended, 3) the other party is ignorant of the true facts, and 4) the party asserting estoppel must rely on the conduct of the party being estopped to her detriment. *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 7 (1990). Because Ms. Dupuis can satisfy all of these elements, she is entitled to recover the amounts due to her under the tuition reimbursement agreement.

First, TC knew the true status of the ownership of the Haven Health Care. Second, because she was not notified of the change in corporate ownership or, more importantly, of any changes to her employment benefits, Ms. Dupuis was justified in believing on an ongoing basis that her employer, whoever it was, would continue to honor the agreement to reimburse her tuition costs. Third, Ms. Dupuis was unaware that TC had assumed control of the Haven Health Center or the terms of any transfer and was equally unaware of any changes to her employee benefits, which, until the ultimate denial of her tuition reimbursement, continued in the same manner as before. The fact that her paycheck came at some point with a different entity name on it was not enough to give her notice that there was a change in her benefit package. Finally, in continuing to enroll for courses, Ms. Dupuis relied on the intentions of her employer to honor the tuition reimbursement program. This reliance proved detrimental when her employment refused to pay for tuition reimbursement and Chancellor's Learning Systems obtained a judgment against her for the unpaid tuition.

TC is now estopped from shirking its obligation to reimburse Ms. Dupuis's tuition under the agreement enter into in May 2007. On the basis of these facts, the court concludes that Ms. Dupuis has proven her claim against TC and is entitled to the $3,500.72 + $800 = $4,300.72. She is also entitled to monthly interest at the rate of 12% per annum (Vermont legal rate) on $4,300.72 - $264.87 = $4,035.85 to the present. This is $40.36 x 14 months or $565.04. The total amount due to date is $4,300.72 + $565.04 = $4,865.76 plus costs.

Ms. Dupuis did not follow through with service of a claim against Haven Healthcare Management, LLC in this case, so any claim against that organization is dismissed without prejudice, meaning that she is not barred from pursuing a claim against it to the extent that she does not receive payment from TC.

**ORDER**

Judgment is entered in favor of the Plaintiff in the amount of $4,300.72, plus interest of $565.04 and costs of $78.75, for a total of $4,944.51.

Defendant TC Healthcare's Motion to Supplement the Record is *denied*.

Any claim against any other entity using the name of Haven Health Center is *dismissed without prejudice.*

Dated at Rutland, Vermont this 28th day of February, 2011.

_____
Hon. Mary Miles Teachout
Superior Judge